## Donnally *versus* Ryan.

*Partnership Debts.—Firm not liable for Money borrowed by individual Partner, unless the Debt is assumed by the Firm.— Widow a competent Witness, after release of Interest.*

1. If one person, for the purpose of entering into partnership with another, borrow money, giving his individual note therefor, and it is used by the co-partner in buying goods for the firm, the debt does not thereby become that of the firm unless expressly assumed.

2. C., about to go into business with his brother J., put in, "as stock for the purpose of forming a partnership with equal shares," certain "gold dust," sent to his wife from her brother R., for which C. subsequently gave his individual note. After the dissolution of the partnership and the death of C., R. brought suit against J. as surviving partner, for the loan to C., claiming it to be a firm debt; on the trial it was proved that J. had used the "gold dust" to buy goods; that he had encouraged C. to embark it as capital, and had advised the plaintiff to permit his brother-in-law C. to put it in the firm as such, but there was no evidence that J. had ever assumed any responsibility. in regard to it. *Held,* That the loan was a personal credit to C., and not a · loan to the firm; and consequently, no liability resulted against J. as surviving partner, and it was error in the court to submit the question, as one of fact, to the jury.

3. The widow of C. was a competent witness for the plaintiff, after she had released her interest in her husband's estate.

ERROR to the Common Pleas of *Crawford county*.

This was an action of *assumpsit*, brought March 7th 1855, by Corydon Ryan against John R. Donnally, surviving partner of the late firm of John R. & Charles B. Donnally, in which the plaintiff declared on the common money counts, and the defendant pleaded *non assumpsit*, and payment, &c.

The main point in the case was, whether the cash proceeds of a certain quantity of gold dust, valued at $800, belonging to the plaintiff, and which was sent in 1851 by him from California to his sister (the wife of Charles B. Donnally) for safe keeping, and which went into the partnership of the two Donnallys, and was used in the purchase of goods, &c., was a debt due by deceased partner alone, or a firm-debt, for which the defendant, as surviving partner, was answerable.

On the trial, the widow of Charles B. Donnally (having released her interest in her husband's estate) was examined as a witness, and detailed the facts connected with the receipt and disposition of the gold dust. John Jones was also examined, under exception, as to declarations of C. B. Donnally, in the presence of John R. Donnally, about the receipt of this money, and several letters from Ryan to C. B. Donnally, and from C. B. Donnally to Ryan, as also a note from C. B. Donnally to Ryan for the amount, dated August 17th 1853, payable in two years; and a receipt from J. R. Donnally to C. B. Donnally, dated March 1853, for $750 in cash, and gold dust to the amount of $400, as stock "for the purpose of forming a partnership of equal shares," &c., were offered and received in evidence, all which is fully set forth in the opinion of this court.

[Donnally *v.* Ryan.]

The plaintiff requested the court to charge the jury : 1. That if John Donnally knew that his partner, Charles B. Donnally, had money in his possession, intrusted to him for safe keeping by Corydon Ryan ; and Charles, with the knowledge of John, applied it to the partnership business, the firm is liable for the money.

2. If the jury should believe that John Donnally was induced by any means whatever, or had any agency whatever in procuring Charles Donnally to invest the money of Ryan in the partnership of John & Charles Donnally, the firm is liable to Ryan for the money.

3. If John and Charles Donnally were in partnership, and, during its existence, Ryan intrusted money to Charles for safe keeping, and this money was applied by him with the knowledge of his partner John, to the partnership business, the firm is liable to Ryan for the money ; nor can this liability be avoided by the partners changing the terms of their partnership, and calling this trust-money as an addition to the share or stock of Charles in the partnership.

4. The note given by C. B. Donnally to Ryan for his debt does not discharge the liability of the firm.

5. A person who has intrusted his money or goods to another, can follow and recover the same from whoever had possession of them with knowledge of the trust.

6. If Charles Donnally let John have the money of Ryan, in violation of his trust, John knowing that he held it as trust-money, and afterwards Charles went into partnership with John, the firm is liable to Ryan.

1. The defendant also requested the court to charge the jury : That if the money for which suit was brought was lent upon the individual credit of C. B. Donnally, the plaintiff cannot recover.

2. That if C. B. Donnally even borrowed and received the amount in question, to enable him to pay his contribution to the capital of the firm, the firm is not thereby made liable, and the plaintiff cannot recover.

3. That the taking of the note from Charles, as given in evidence, is a release of the partnership, if even liable before.

The court below affirmed the plaintiff's first, second, and third points, with this addition to the second : "that if J. R. Donnally knew that the money was put in by C. B. Donnally, without the knowledge and consent, and contrary to the instructions of the plaintiff, then the answer is as requested in these three points." The third and fourth points were answered by saying that, "if the note given by C. B. Donnally to Ryan was taken and accepted with a knowledge of his rights and as a settlement of his claim, the plaintiff would be bound by it, and bound in this suit ; but that if, as alleged by counsel, it was merely to settle the amount of

the claim, and to furnish evidence of that fact and all that he could obtain, it is no bar to the plaintiff's claim here. That it is not necessarily a release of the partnership, if liable before, but might be so or not, according as the jury are satisfied, before indicated." The plaintiff's fifth and sixth points were affirmed, as also the first and second points propounded by defendant.

Under these instructions there was a verdict and judgment in favour of the plaintiff. Whereupon the case was removed into this court by the defendant, where the ruling of the court below, allowing the widow of C. B. Donnally to testify; permitting a witness to testify to declarations of C. B. Donnally, without requiring the preliminary proof necessary to render them admissible; and the answer given to the points presented by plaintiff and defendant, were assigned for error.

There were eleven specifications of error, but the main question in the cause was whether there was sufficient evidence of the legal liability of the firm of John R. & Charles B. Donnally, to warrant the court below in submitting that fact to the jury.

*G. Church* and *S. Newton Pettis*, for plaintiff in error.

*W. R. Scott* and *D. M. Farrelly*, for defendant.

The opinion of the court was delivered, January 13th 1862, by WOODWARD, J.—That John R. and Charles B. Donnally were partners in mercantile business, and that gold dust of Ryan, to an amount exceeding $800, sent from California to his sister, who was the wife of Charles B. Donnally, for safe keeping, went into the partnership of the two Donnallys, and was used by them in the purchase of goods, are among the unquestioned facts of the case; but whether the gold dust was put in as capital by Charles, or was taken and used by the firm on their joint credit, was the contested question of fact. This question was fairly submitted to the jury, and they found that it was not advanced by Charles as capital, but was used by the firm as joint borrowers from Ryan. The consequence was a verdict against John, as the surviving partner of the firm.

The only question that can arise upon such a record for the consideration of a court of error, is whether there was evidence to justify the court in submitting that question of fact to the jury. Upon a careful examination of all the proofs that have been sent up, we are compelled to say, very reluctantly, that the evidence did not justify such a submission. Mrs. Sarah Donnally, widow of Charles and sister of Ryan, proves that John and Charles were in partnership, and that John bought goods with part of the gold dust; but she proves no fact that tends to

show in what character the firm used Ryan's money. Nor does Jones. The letters of Charles to Ryan, one of which was in John's handwriting, were importunate persuasives to Ryan to consent that his money should be devoted to trade in some form either as capital advanced by himself to make him a partner, or as money loaned to Charles, that he might put it in as capital, or as capital loaned to the firm. Ryan's letter of February 21st 1852 conveyed his answer in these words: "Charles, I want you to do the best that you can in changing the dust that I sent to you. I think if it is correct there will be nearly $900 of it; when you ascertain, I want you to take the whole or part, as you choose, and send me sufficient security, by letter, for the term of years that you wish to keep it." Again, under date of January 18th 1853, he wrote to Charles: "I am anxious to know whether you have got it, and what is your conclusion in regard to the time and manner of keeping it. I would rather have the term limited to two or three years, after which, if convenient, I could let you have it longer, if you wished it." On the 17th of August 1853, Ryan took from Charles his individual note for the gold dust, amounting to $897.26, at two years, with interest.

Now it is impossible to doubt, with this written evidence before us, that Ryan's conclusion was not to embark his capital in trade on his own account, but to loan it to his brother-in-law Charles, to be used according to his discretion. There was no reference to John or to the firm, as his borrowers; it was manifestly a personal credit to Charles. In March 1853, John receipted to Charles for $750 in cash—the proceeds of the sale of Charles's farm—and for a package of gold dust valued at $400, "as stock for the purpose of forming a partnership of equal shares;" which is express evidence that half of the gold dust went in as Charles's stock in trade. Mrs. Donnally says she gave John an order for the first package, for which he gave no receipt. That this went in also as part of Charles's capital was shown by the letters and the note above referred to, whilst, from beginning to end, there was nothing to show a pledge of the firm's credit for the gold dust. John used it in buying goods, because he was the more experienced merchant. He encouraged Charles to embark it as capital, and he encouraged Ryan to permit Charles to put it in as capital; but where is the evidence that he ever assumed or indicated an intention to assume any responsibility in respect of it? We confess we cannot find it. Counsel speak of a change of the terms of partnership between John and Charles, on the 24th of March 1853. We see no evidence on that point, except the receipt of John before referred to; and that is an express declaration that $400 of the gold dust was received from Charles "*as stock*." The note of August 1853 proves it all to have been loaned to Charles. Both the receipt and the note might have

been explained so as to be made consistent with the theory of the plaintiff's action ; but they were not, and, standing alone, unexplained and uncontradicted, they showed that beyond all reasonable grounds of doubt, the plaintiff below lent his gold to Charles, and that Charles put it into the firm as his stock in trade.

Out of such a state of facts, would any liability result against John as surviving partner ?   Clearly not.   The authorities are conclusive on the point.   " The attempt is," said this court in Brook *v.* Evans, 5 Watts 200, " to charge a partner with a debt, contracted not by himself, or on his credit, but by his fellow before the partnership was constituted, and this, because the subject-matter which was the consideration of the debt, had been carried into the partnership as stock.   Without a subsequent assumption by the firm, this cannot be done."   Again, in Graeff *v.* Hitchman, Id. 454, " if a partner borrow money and give his individual note for it, it does not become a partnership debt by reason of the application of the money to partnership purposes." Once more, in Clay *v.* Cottrell, 6 Harris 413, the language in reference to a similar transaction was : " It was, in fact, an investment of so much capital by Caldwell, for which he was entitled to a credit on the firm-books, but it raised no obligation in morals or law on the part of Cottrell to reimburse the creditor who had loaned the capital to his partner."   See also Collyer on Partnership, § 516 ; Story on Partnership, § 148, and the cases therein cited.

The point stands as clear on reason as on authority ; for where no credit is given to a firm, which, in law, is a distinct person from the members who compose it, why should redress be sought against the firm ?   As well might a creditor who had loaned his money on the credit of an individual, attempt to pursue it into the business or property of third parties, and hold them responsible to himself.   Neither money nor gold dust has any earmark that it can be so followed.   The firm was responsible for this money to Charles—not to his loan-creditor.   But the rights of the firm-creditors were paramount to Charles's rights, and of course to those of his creditor.   If, as a consequence of these familiar principles, the plaintiff below have lost his property, he must charge his misfortune to his misplaced confidence.

There is no ground for reversing in the bills of exception to evidence.   Mrs. Donnally's release made her competent, and there was nothing in Jones's testimony to benefit the plaintiff or to injure the defendant, so that his evidence, if improperly admitted, was harmless.

It is scarcely a case for a *venire*, but as it is possible the plaintiff may find proofs to support his action, we will give him ano-

[Donnally *v.* Ryan.]

ther chance, when, if the evidence be as it was on the last trial, the jury should be directed to return a verdict for the defendant. The judgment is reversed, and a *venire facias de novo* is awarded.

THOMPSON, J.—I dissent from the conclusion in the above opinion, that there was not sufficient evidence to be submitted to the jury on the point of liability of the firm. I think there was.

Concurring opinion by
READ, J.—There was not sufficient evidence in the case to warrant the verdict of the jury, but the court were right in their view of the law. The principles involved in it are few and simple, and grow out of the partnership relation.

If a partner, who is a bailee of money intrusted to him for safe keeping, with the knowledge of the other member of the firm, applies this trust-money to the partnership business without the knowledge and consent of the bailor or *cestui que trust*, and contrary to instructions, the firm is liable for it, and it becomes a partnership debt. The case is only a little stronger if he was urged by his partner to commit this breach of trust.

Without entering into the question whether an express agreement to discharge a retired partner is not inoperative for want of consideration, as was ruled by the earlier English authorities, and which seems to be the law of New York, it is sufficient for the present to state the law as laid down at present in England, which is the most favourable for the plaintiff in error. The English cases are generally those of retiring partners where a creditor takes the security of the new firm. In such a case the Master of the Rolls, in Harris *v.* Farwell, 15 Beavan 31, says: "The law is this—when a creditor of a firm contracts or agrees with a new firm to take their security in discharge of that of the old, the retiring partner is discharged from any liability to pay the debt: but whether such a contract or agreement has or has not taken place is a question of fact to be submitted to a jury." "I think Lord Cottenham clearly states the law in Winter *v.* Innes, 4 Mylne & C. 108, 109, and I think that all these cases will be found to resolve themselves into this: not only whether it is the fact that the creditor has accepted the separate security of the continuing partners, but whether he has also done so in discharge of the joint debt." And the same is the principle of the decision in Lyth *v.* Ault, 11 Eng. L. & Eq. 580, by the Court of Exchequer.

And Mr. Lindley in his late work on Partnership, vol. 1, p. 257, says: "It is not unusual to represent Lodge *v.* Dicas and David *v.* Ellice as altogether overruled by Thompson *v.* Percival and other cases. This, however, is going too far. The three

[*Donnally v. Ryan.*]

.cases together establish, 1. That a creditor who treats the continuing partners as his debtors does not necessarily abandon his right to resort to a retired partner for payment; 2. That whether he does or not is a mixed question of law and fact which ought to be submitted to a jury ; and, 3. That their verdict will not be disturbed by the court upon the grounds acted on in Lodge *v.* Dicas and David *v.* Ellice.

The present case is stronger, for it is that of a simple dissolution of partnership, and the taking of the note of one of the partners by the plaintiff without any proof of any contract whatever to discharge the present defendant. The first two points of the defendant were answered in the affirmative, and the third was properly negatived, as it asked the court to say the simple taking of the note from Charles is a release of the partnership, which 'we have seen is not the law.

The charge of the court, and their answers to the plaintiff's points, are in strict conformity to the law as we have stated it, and we can discern no error in the manner in which the case was submitted to the jury. .

The widow was a competent witness : Cornell *v.* Vanartsdalen, 4 Barr 364. Under the offer the evidence of John Jones was properly admitted, and we do not see that it was liable to objection as the evidence turned out, but, if it was, the counsel of the defendant should have requested the court to strike it out. We cannot see, however, that the defendant has suffered by its admission.