## Morrison, Appellant, *v.* Curry.

*Partnership—Case for jury—Evidence.*

1. In an action against an executor where the case turns on whether the testator was or was not a partner with his brother at a time when a certain loan was made to the alleged partnership, and the evidence on the subject is conflicting, the case is for the jury.  In such a case the burden is upon the plaintiff to show that the claim was a partnership debt when it was created, or that it was subsequently assumed by the incoming partner.

2. If one person, for the purpose of entering into partnership with another borrows money, and uses it in the partnership business, the debt does not thereby become that of the firm, unless expressly assumed.

*Evidence—Witness—Competency of witness—Party dead—Act of June 11, 1891, P. L. 287.*

3. Where the plaintiff, an executor, calls witnesses to prove certain conversations that they had had with the defendant, and certain admissions he had made to them in the lifetime of plaintiff's testator, the defendant is competent under the Act of June 11, 1891, P. L. 287, to contradict such testimony.

Argued May 2, 1910.   Appeal, No. 6, April T., 1910,

by plaintiff, from judgment of C. P. Jefferson Co., April Term, 1908, No. 295, on verdict for defendant in case of G. A. Morrison, Executor of James McGee, deceased, v. C. A. Curry, Executor of Gurnie Curry. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Assumpsit to recover moneys which it was alleged plaintiff's testator had been compelled to pay as a surety of defendant's testator. Before REED, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned* were (2–7) various portions of the charge, and (8, 9) ruling as to the testimony of Gurnie Curry, quoted in the opinion of the Superior Court.

*A. J. Truitt,* for appellant.

*W. W. Winslow,* with him *J. E. Calderwood,* for appellee.

OPINION BY MORRISON, J., July 20, 1910:

Counsel for appellant states in his history of the case that about April 1, 1904, Blair Curry and his brother, Gurnie Curry, bought out William A. McGee's hotel business, known as the Benson Hotel, at Anita Mines, Jefferson county, Pennsylvania. They paid him $5,000 consideration therefor—Blair paying about $100 and Gurnie some $636 thereof—and secured the balance from other sources—$3,500 being borrowed by Blair from a bank on a judgment note on which James McGee and others were his sureties. The $3,500 note having been discounted by the bank for the firm on April 20, 1904, some weeks after Gurnie became a dormant partner therein and the proceeds as aforesaid entering into the firm's business.

An examination of the testimony shows that this is not a fair statement of the transaction in so far as it assumes that Gurnie Curry was a dormant partner in the purchase

of the hotel with his brother, Blair.   The fact that Gurnie Curry was a dormant partner for a portion of the time that the hotel was run in the name of Blair Curry is conceded, but there is positive testimony that Gurnie Curry did not become interested as such partner for some time after the purchase by Blair and after the giving of the note above referred to, and there is also testimony that Gurnie had no knowledge of the note nor of what was done with the proceeds thereof.   The court below in the charge explicitly states that on or about April 1, 1904, Blair Curry bought the hotel.   The court further states that James McGee, one of the signers of said note with Blair Curry, having died, his estate was compelled to pay one-third of the judgment which was secured on said note or its renewal.   The amount so paid was $1,160.87, and this suit was brought for the recovery of that sum.

The learned court further said to the jury: "The plaintiff bases his right to recover in this action on the allegation that Gurnie Curry and Blair Curry jointly borrowed this money, although it was borrowed by Blair Curry and his individual note given for it.   In other words, the plaintiff alleges that Blair Curry and his brother, Gurnie Curry, were partners in the purchase of this hotel; that they bought it together, and subsequently ran it as partners, being jointly interested, each having an undivided one-half interest in the business.   That this fact was unknown to the Punxsutawney National Bank, as well as to the sureties who went on Blair Curry's note at the time this money was borrowed out of the bank and the note given; that they supposed Blair Curry was the only person interested in the transaction.   But the plaintiff here alleges that Gurnie Curry was a silent or dormant partner with his brother, and that the purchase of the hotel was made by them as partners and that they were jointly interested at the time, and that the money was borrowed for the purpose of purchasing this property on their joint account, and that while Gurnie Curry was not known in it he was—as we have already stated—a silent or dormant partner

in the transaction; and the bank, not having any knowledge of that fact at the time, would have a right subsequently, upon discovery of the fact that there were others interested in the loan, to recover from parties interested in it at the time it was made.

"We say to you, gentlemen, as a matter of law that a silent or dormant partner is one who is unknown in the partnership; but he is liable for the firm contracts that are made during the time he is actually a partner, although that fact may not be known to the persons who deal with the ostensible partner who is known. And therefore, if Blair Curry and Gurnie Curry were jointly interested in the purchase of this hotel; if they were actually associated together as partners in the purchase of that hotel at the time it was purchased and at the time this money was borrowed out of the bank; they both would be equally liable for the payment of that money to the bank or to anyone representing the interests of the bank in the note."

The court further instructed the jury as follows: "But the question is, When did Gurnie Curry become a partner? When did he become interested with Blair Curry in that hotel? The plaintiff alleges that Gurnie Curry was interested in the inception of the transaction, from the beginning or at the start of it; that Blair Curry was representing not only himself, but also Gurnie Curry in the purchase of this hotel and in the borrowing of this money. And if that is true, and if there was nothing else in the case, we instruct you as a matter of law here that the plaintiff would be entitled to recover." The court then calls attention to the evidence denying that Gurnie Curry was associated with his brother Blair in the purchase of the hotel or that he had any interest in that transaction at the time of the purchase and that his interest in it arose subsequently. The question was then carefully submitted to the jury as to what the facts were in this respect and the jury was correctly instructed as to the liability of Gurnie Curry dependent upon the facts to be found

by the jury from the disputed evidence. The court further instructed the jury that if Gurnie Curry was not originally liable, there was nothing in the case to render him liable upon the grounds of ratification. But that if Gurnie was not interested at the inception of the transaction and not liable on the note, he could render himself liable by assuming or agreeing to pay it and this question was left to the jury as to whether or not he did so assume liability for the payment of the note.

In our opinion, the case was well tried by the court and every ground upon which Gurnie Curry or his estate could be held liable was correctly submitted to the jury. The court told the jury that if Gurnie was a dormant partner from the inception of the transaction, there could be a recovery against his estate in this suit. And further, if his interest or dormant partnership occurred after Blair purchased the property and gave the note in question, and Gurnie Curry becoming interested in the transaction assumed liability for the payment of the note, then the plaintiff might recover in this suit. In our opinion, under all of the cases, to sustain his case the appellant must satisfy the jury that the claim was a partnership debt when it was created, or that it was subsequently assumed by the incoming partner. No one contends in this case that if Gurnie Curry was a dormant partner from the beginning, that his estate could escape liability in this suit, nor is it contended if he was informed of the transaction and became a dormant partner later and assumed liability for the debt that his estate would not be liable: Hill v. Voorhies, 22 Pa. 68; Graeff v. Hitchman, 5 Watts, 454.

The difficulty with the plaintiff's case is that his evidence did not convince the jury of the necessary facts upon which a verdict could be found in his favor under the law governing the case.

In Donnally v. Ryan, 41 Pa. 306, it was held as stated in the syllabus: "If one person, for the purpose of entering into partnership with another, borrow money, giving his individual note therefor, and it is used by the copart-

ner in buying goods for the firm, the debt does not thereby become that of the firm unless expressly assumed." See Siegel v. Chidsey, 28 Pa. 279; Brooke v. Evans, 5 Watts, 196.

The eighth assignment complains of the court for reading the incompetent testimony of Gurnie Curry to the jury from the auditor's report in the estate of James McGee, deceased, to wit: "I, Gurnie Curry never had anything to do with a $3,500 note given by my brother to the Punxsutawney National Bank. I was never a party to it nor was it given on my credit. I did not come to Anita until a week after my brother bought the place." Gurnie Curry's testimony before the auditor was given after G. A. Morrison, the plaintiff, and A. J. Truitt, Esq., his attorney, had testified to certain conversations they had had with Gurnie Curry, and certain admissions he had made which tended to prove the existence of a partnership between himself and Blair Curry at the time the note was signed, in the lifetime of James McGee; and Gurnie Curry was called to contradict this and other testimony that had been offered as to events occurring during the lifetime of said McGee. This seems competent under the Act of June 11, 1891, P. L. 287.

The learned court below in his opinion refusing a new trial, in speaking of this testimony, says: "My recollection is that when the defendant offered this testimony, counsel for the plaintiff stated that he had objected to it before the auditor as incompetent. But no specific objection was made, or ruling obtained, on this introduction in evidence on the present trial, and therefore, no error was committed in reading it to the jury. It is not conceded, however, that this was incompetent testimony."

We think this case was fairly submitted to the jury and in view of the testimony we are not surprised with the verdict nor with the refusal of the court to grant a new trial.

The assignments of error are all overruled and the judgment is affirmed.