## ESTATE OF MARY A. CORSON, DECEASED.

APPEAL BY SARAH YEAKEL, EXRX. OF MARIA CORSON, DECEASED, FROM THE ORPHANS' COURT OF MONTGOMERY COUNTY.

Argued February 3, 1890—Decided October 13, 1890.
[To be reported.]

1. When an accountant in the Orphans' Court is called for cross-examination by an exceptant seeking a surcharge, and is examined as to matters occurring before the death of his decedent, he thereby becomes a competent witness, in his own behalf, as to relevant matters occurring before or after the decedent's death: § 7, act of May 23, 1887, P. L. 160.

(a) Property, alleged to be of the estate of a decedent, was claimed by the accountant as a gift from the decedent in her lifetime. Evidence was submitted that, at the time of the gift, the decedent was illiterate, that the accountant was her spiritual adviser, and that he aided her also with his advice and services in the management of her business:

2. The auditor, placing upon the accountant the burden of proof as to the validity of the gift, his finding from sufficient testimony, with the approval of the Orphans' Court, that the gift was the free and intelligent act of the donor and that it was not effected by fraud or undue influence on the part of the donee, will not be disturbed.

Statement of Facts.

3. One claiming to be the owner of bonds and shares of stock, in the possession of an executor who has charged himself with them in his account, cannot assert title to the securities adversely to the estate, and seek to recover them in a proceeding in the Orphans' Court, on exceptions filed to the executor's account.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 388 January Term 1889, Sup. Ct.; court below, number and term not given.

On July 29, 1887, Rev. J. Q. McAtee filed his first account as executor of the will of Mary A. Corson, deceased, showing a balance for distribution of $11,819. To this account, Maria Corson, the mother of the testatrix, filed exceptions, alleging, inter alia, that the accountant should be surcharged with a U. S. bond for $1,000 and 100 shares of North. Pac. R. Co. stock, as of the estate of the decedent, and that certain U. S. bonds for $2,400, 66 shares of North. Pac. R. Co. stock, and $3\frac{1}{2}$ shares of Jefferson Fire Ins. Co. stock, accounted for as part of the estate of the decedent, were the property of the exceptant and should be transferred to her. Thereupon, the account and the exceptions thereto were referred to *Mr. B. E. Chain* as auditor.

At the hearing before the auditor, the exceptant called Rev. J. Q. McAtee, the accountant, as if on cross-examination. The witness, being shown a folded paper, was asked:

Mr. Fox: Q. Do you recognize that paper? Is that your handwriting on the back of it? A. I think that is my handwriting, taken at the time we appraised John Lentz's estate. I was one of the appraisers, with Levi Streeper. Q. You made it in my office, did you not? A. I cannot swear to that.

Mr. Hunsicker: Q. Which part do you mean is in your writing? A. The lead pencil only. I cannot swear when I made it. Q. On the back of the paper? A. The back of the paper is my writing, but I cannot tell where I made it.

Mr. Fox: Q. Try to recollect if you did not make it in my office on my table. A. I cannot recollect it.*

---

* This pencil writing was a memorandum indorsed on a rough copy of the inventory of the estate of John Lentz, deceased, apparently a summary of the items thereof, and footing up $8,429.36. The memorandum was

Statement of Facts.

At a subsequent meeting, the testimony in behalf of the accountant was taken, when the accountant was recalled and his counsel proposed to "prove by this witness things that transpired in the lifetime of Mary Ann Corson, as well as things that have transpired since." Being objected to, the auditor admitted the offer and noted an exception "both to the competency of the witness and as to the testimony." The accountant was then examined at length, as to matters occurring in the lifetime of his decedent. The accountant's wife was also examined, generally, in his behalf.

In his report, the auditor found from the testimony submitted including that of the accountant, that Mary A. Corson, the decedent, died on June 24, 1886, aged about sixty-three years. She was the daughter and only child of Maria Corson, who was aged about ninety years, and blind. John Lentz, an uncle of Mary A. Corson, had died in 1884, having bequeathed and devised to her all his estate, inventoried at $8,429.36, including 120 shares of North. Pac. R. Co. stock, 3½ shares of Jefferson Fire Ins. Co. stock, and $1,050 in U. S. bonds. Mary A. Corson was made the executrix of the will of her uncle, and received letters testamentary thereon on March 5, 1884. She was illiterate, and in their business she and her mother relied upon the advice and assistance of Rev. McAtee, the accountant, who was the clergyman in charge of the church to which she belonged. In September, 1884, Mr. McAtee aided to have the 120 shares of railroad stock transferred to Miss Corson. He had advanced to her money for certain purposes, and afterwards accompanied her to Philadelphia, "and at the house of Drexel & Co., on January 5, 1885," as reported by the auditor, "she sold and he purchased of her, at the then market rates, a $1,000 U. S. bond, she paying him the amounts so loaned her. This amount had been loaned her in two sums, one of $550, and the other of $375."

On January 12, 1885, Miss Corson, in company with Mr. McAtee, went to the Guarantee Trust Co. in Philadelphia, where she kept her securities, and "she transferred 100 shares

---

offered in evidence and objected to, but it did not appear that the offer was admitted. John Lentz had died in February, 1884 ; letters on his estate were issued to Mary A. Corson, the accountant's decedent, in March, 1884.

of the preferred stock of the North. Pac. R. Co. to Mr. McAtee," as reported by the auditor, " at the same time declaring that it was so transferred because he had been a friend both to her and her mother, as compensation for his services. The gift of this large portion of her personal estate was made with the knowledge of and approbation of her mother, Maria Corson, and without solicitation on his part. . . . . Shortly after this, McAtee, in February, 1886, sold the 100 shares of North. Pac. R. Co. stock, so as aforesaid transferred to him, at Drexel & Co.'s office in Philadelphia, for $3,775, cash. Of this fact both Mary and her mother were informed and expressed their approval thereof."

On January 14, 1885, Mary A. Corson and Maria Corson, her mother, each executed a will. About April 14, 1885, Maria Corson transferred to Mary Ann Corson, $2,400 U. S. bonds, which had been her own property. These bonds were registered and new certificates therefor were issued to Miss Corson. And in January, 1886, Mrs. Corson transferred to her daughter 3½ shares of Jefferson Fire Ins. Co. stock, and at a later date 66 shares of North. Pac. R. Co. stock. The auditor found the circumstances under which each of these transfers were made.

The wills of Mary A. Corson and her mother, before referred to, were executed in the full belief and expectation that Miss Corson would survive her mother, but on June 24, 1886, as stated, Mary A. Corson died, leaving a later will executed by herself on February 19, 1886, wherein Rev. McAtee was made a legatee of $1,200 and also the executor. This last will was admitted to probate on July 1, 1886, and on July 19, 1886, Maria Corson entered an appeal from the decree of the register admitting said will to probate, but after a protracted contest the will was established. Mr. McAtee, as executor of the will, on July 22, 1886, filed an inventory which included the $2,400 U. S. bonds, the 66 shares of railroad stock, and the 3½ shares of the insurance company stock.

Upon the subject of the exceptions relating to the $2,400 U. S. bonds, the 66 shares of railroad stock, and the insurance stock, the auditor reported as follows:

It is in evidence that a bill in equity is pending, in which said Maria Corson is plaintiff and in which it is sought to can-

cel these transfers. It is submitted that by this bill the plaintiff has sought the proper forum in which to accomplish the end desired. If these bonds and stocks belong to the estate of Mary Ann Corson, then they must be disposed of as her will directs. If, on the contrary, they belong to Maria Corson, then they do not compose Mary Ann Corson's estate and the Orphans' Court has no jurisdiction over them. Much testimony was taken in regard to this ownership, but, the auditor believing that in this proceeding the court has no jurisdiction, he refrains from making any report relating to said ownership, and from expressing any opinion upon that question. . . . .

—As to the exceptions relating to the gift of the 100 shares of North. Pac. R. Co. stock, the auditor, considering Hunter v. Atkins, 10 Eng. Ch. 135; Huguenin v. Baseley, 14 Ves. 273 (2 Lead. C. in Eq. 1156); Greenfield's Est., 14 Pa. 489; Darlington's App., 86 Pa. 512; Cuthbertson's App., 97 Pa. 163; Wilson's App., 99 Pa. 545; Miskey's App., 107 Pa. 611, reported as follows:

The question now to be considered is, has McAtee shown affirmatively that this gift to him of 100 shares of North. Pac. R. Co. stock was the free and voluntary act of the donor's mind uninfluenced by him or any one acting for him? If it was, then it will stand; for, though no power of revocation is reserved in the gift, yet this fact will not affect the question, for it is not the donor who now seeks to annul it, but a volunteer, to wit, the heir of the donor, who stands on the same footing with the donee, who is also a volunteer. Beside, as is remarked by Judge KNOX in Greenfield's Est., 24 Pa. 232, " There is no rule of law or morals which prevents ministers of the gospel from receiving gifts, large or small, from their parishioners, or from other persons not belonging to their congregations."

Now, in answering this question, the auditor feels that in this case, as in other cases, he must be governed by the weight of the testimony. While Mr. McAtee was the agent of the donor, and also her spiritual adviser, yet we fail to find evidence to show any influence exerted by the donee which affects the validity of the gift. The only evidence upon the subject, having reference to the transfer of this stock is that given by himself, in which he says she wished him to take her to Phil-

Auditor's Report.

adelphia, that she wanted to make him a gift; that he did go with her, and she said she wished to give him some North. Pac. R. Co. stock; that the Guarantee Trust Company was the place to go to; that he introduced her to Mr. Gilroy, the secretary and treasurer of the company; he then left; in his absence, and without his knowledge of the character or amount of the gift, she then made to him a transfer of 100 shares of stock; that on his return, the act had been done and she then handed him the certificate transferred, and told him it was a gift to him for his kindness to her and her mother. This is corroborated by Mr. Gilroy. The fact of this gift was communicated to the mother, the present exceptant, and confirmed by her at the time, or shortly after. That it was referred to and confirmed by the donor and by the present exceptant, is further corroborated by the testimony of Mrs. Hattie Bean, Miss Mary Hallman and by Mrs. McAtee.

This testimony is uncontradicted, and would seem to confirm the gift as a free and uninfluenced act of the donor's mind, and hence I am constrained to report that it cannot now be annulled. I may add that we have no right, in the decision of this question, to consider the propriety of the donor making the gift, nor of the donee, under the circumstances, accepting the same.

The auditor having reported a distribution in accordance with his findings of fact and law, Maria Corson filed exceptions alleging that the auditor erred, inter alia:

2. In not deciding that the gift of the 100 shares of North. Pac. R. Co. stock to Mr. McAtee was void in law.

4. In not finding that the said McAtee should forthwith transfer to exceptant her $2,400 U. S. bonds, her 66 shares North. Pac. R. Co. stock, and her 3½ shares Jefferson Fire Ins. Co. stock.

6. In admitting the testimony of Mr. McAtee as to matters which occurred in the lifetime of the decedent.

14. In not surcharging the accountant with the value of the $1,000 bond of the decedent, unaccounted for except by his own illegal testimony.

Said exceptions having been argued, the court, SWARTZ, P. J., dismissed them, confirmed the report of the auditor, and entered a final decree accordingly. Thereupon, the exceptant

Arguments.

having died, her executrix, Sarah Yeakel, took this appeal, specifying that the court erred in dismissing the several exceptions filed and in confirming the auditor's report.

*Mr. Gilbert R. Fox, Jr.,* and *Mr. N. H. Larzelere* (with them *Mr. Gilbert R. Fox*), for the appellant:

1. The accountant should have been surcharged with the value of the 100 shares railroad stock. Being the confidential, trusted agent, as well as the spiritual adviser of the party, he could not take such a gift. The sting of disability was in the situation. It would be so, even if the evidence was clear that she was of ordinary intellect; but it was plain that she was weak and easily overcome by the persuasion or the control which a sharp, shrewd business man, like this executor, would acquire over such a person by constant attention and flattery. Her acts, in giving away three fourths of her estate, show her weakness, independently of other testimony.

2. The relation of confidence which McAtee sustained to the decedent as spiritual adviser, as the custodian of all her securities, and as her trusted agent transacting all her business, made it impossible that the gift should stand: 2 Lead. Cas. in Eq., 1192; Shelford on Lunacy, 2 Law. L. 265–269, 270–273; Gibson v. Jeyes, 6 Ves. 266; Hill on Trustees, 156; 2 Story's Eq., § 218; Hatch v. Hatch, 9 Ves. 292; Chesterfield v. Janssen, 2 Ves. Sr. 125; Hull v. Perkins, 6 Wend. 631; Greenfield's Est., 14 Pa. 505; Caldwell v. Anderson, 104 Pa. 204; Archer v. Hudson, 7 Beav. 551; Darlington's App., 86 Pa. 512; Miskey's App., 107 Pa. 630; Cuthbertson's App., 97 Pa. 163; Wilson's App., 99 Pa. 545; Wilson v. Mitchell, 101 Pa. 505.

3. As to the $1,000 U. S. bond. The only evidence that it had been transferred to the accountant was his own testimony, which was inadmissible. Besides, under all the circumstances, his unsupported testimony was not entitled to credit. And, as to the $2,400 U. S. bonds, the railroad and insurance stocks, the transfer of them to Mary Ann was without consideration, and there was no occasion for it. The accountant charged himself with these items in his account; his account was in the jurisdiction of the court, and the court not only had the power, but it was its duty, to do complete justice between the parties: Kittera's Est., 17 Pa. 422; Whiteside v. Whiteside, 20 Pa. 474;

Shollenberger's App., 21 Pa. 337; Johnson's App., 114 Pa. 139; Otterson v. Gallagher, 88 Pa. 357; Miskimins' App., 114 Pa. 533; Neill's Est., 19 W. N. 383; Mussleman's App., 65 Pa. 480; Postlethwaite's App., 68 Pa. 480; Black v. Black, 34 Pa. 357; Dundas's Est., 73 Pa. 474; Patterson's App., 116 Pa. 9; McMurray's App., 101 Pa. 427.

*Mr. Joseph Fornance* and *Mr. Charles Hunsicker*, for the appellee:

1. The auditor bases his finding that the 100 shares of railroad stock was a gift from Miss Corson to Mr. McAtee, the free and uninfluenced act of the donor's mind, upon the uncontradicted testimony of seven witnesses. Although the burden of proof was placed on the donee to establish the fairness of the transaction, and that the gift was not procured by fraud, concealment, or other improper means, and that the donor had full knowledge of its character, extent and value, he certainly established it beyond all doubt. In addition to the cases cited by the auditor, reference is made to Pringle v. Pringle, 59 Pa. 285; Russell's App., 75 Pa. 269.

2. A study of the testimony (reviewed) will show that it was impossible for the auditor to come to any other conclusion. Moreover, the finding of the auditor upon the facts, which has been approved by the court below, will not be disturbed on appeal except for flagrant error: Burroughs's App., 26 Pa. 264; Whiteside's App., 23 Pa. 114; Mellon's App., 32 Pa. 121; Landis v. Scott, 32 Pa. 495; Robinett's App., 36 Pa. 174; Dellinger's App., 71 Pa. 425; Sawtelle's App., 84 Pa. 306; McConnell's App., 97 Pa. 31; Loomis's App., 22 Pa. 312; Bull's App., 24 Pa. 286; Bolton's App., 3 Gr. 204; Chew's App., 45 Pa. 228; Gilbert's App., 78 Pa. 266; Bedell's App., 87 Pa. 510.

3. Mr. McAtee was clearly a competent witness under § 7, act of May 23, 1887, P. L. 160: "Such person, so cross-examined, shall become thereby a fully competent witness for the other party as to all relevant matters, whether or not these matters were touched upon in his cross-examination." And, as to the $2,400 in U. S. bonds, the railroad and the insurance stocks, claimed as the property of the exceptant adversely to the estate of the decedent, the auditor properly decided that the Orphans' Court had no jurisdiction, and that this claim must

be determined in the pending proceeding in equity: Groff v. Groff, 14 S. & R. 181; Weyand v. Weller, 39 Pa. 443; Harrisburg N..Bank's App., 84 Pa. 380; McBride's App., 72 Pa. 480; Braman's App., 89 Pa. 78; Winton's App., 111 Pa. 387.

OPINION, MR. JUSTICE McCOLLUM:

The accountant was a competent witness in his own behalf, as to all relevant matters, after the exceptant had compelled him to testify as if under cross-examination: §7, act of May 23, 1887, P. L. 160. His credibility, like that of any other witness, was for the auditor, who, in weighing his testimony, should and presumably did have due regard to his position and interest in the cause. His explanation of the transfer to him of the $1,000 United States bond was complete, clear, and uncontradicted by any evidence, direct or circumstantial, and it showed that he purchased the bond and paid full value for it. This explanation was satisfactory to and credited by the auditor, and he therefore refused to surcharge the accountant with the value of the bond. He could not have done otherwise, without palpable and arbitrary disregard of undisputed testimony.

The gift of one hundred shares of the preferred stock of the Northern Pacific Railroad Company was made on the 12th of January, 1885, and the donor died on the 24th of June, 1886. It was repeatedly acknowledged and confirmed by her in conversation with friends, and she never evinced any disposition to recall or impeach it. It was advised and afterwards approved by her mother, under whom the appellant claims. The relations between the donor and donee were such as cast upon the latter the burden of showing that the gift was the free, intelligent, and uninfluenced act of the former. If it was, her right to make it cannot be successfully questioned, and he might lawfully accept it. That she did precisely what she intended to do is not denied, and that she had an intelligent comprehension of what she was doing is apparent from the uncontradicted evidence. The learned auditor, starting with the presumption against the donee arising from the relations of the parties, found from the testimony, with the approval of the Orphans' Court, that the gift was the free act of the donor, and that there was no taint of fraud or undue influence in it.

If this finding was authorized by the evidence we cannot set it aside. It appears that the donor, more than a year subsequent to the gift, executed a will in which she gave to the donee a legacy. This will was attacked by her mother upon the ground that it was the product of undue influence exercised over the testatrix by the present accountant. The will was sustained, and the decision of the Orphans' Court refusing an issue was not appealed from. It is not pretended that the testatrix had more capacity, or that the accountant had less influence with her, when she executed the will than when she made the gift. We have carefully read and considered all the evidence submitted to the auditor, and, in view of it, are unable to say that he erred in finding that the gift was the free, uninfluenced act of the donor.

We, approve the refusal to decree that the stocks and bonds received by the decedent from her mother be transferred to the estate of the latter. A suit in equity for the recovery of these securities was then pending in the Court of Common Pleas, and that was the proper tribunal to settle the questions raised by the bill and answer. It had undoubted jurisdiction of the subject, and was proceeding in due ˙course to a decision. The appellant is seeking to recover specific securities, in the possession of the executor of the estate of Mary Ann Corson, upon the ground that the title to them is in the estate of Maria Corson. The executor of the former estate has filed an account in the Orphans' Court, in which he is charged with these securities. But, what standing has the appellant to object to this? It is an act which does not prejudice any title of the estate she represents, and she is not contesting it as heir, creditor, or legatee of the estate of which the accountant is executor. It is a novel proposition that a party who asserts title to a chose in action in possession of and claimed by an estate, may recover it in an audit on exceptions to the executor's account.

Decree affirmed, and appeal dismissed at the costs of the appellant.