## Groome's Estate.

Argued January 9, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN and PATTERSON, JJ.

*Walter Lee Sheppard,* for appellant.

*R. Sturgis Ingersoll,* with him *Boyd L. Spahr, Jr.,* of *Ballard, Spahr, Andrews & Ingersoll,* for appellee.

OPINION BY MR. JUSTICE DREW, February 1, 1940:

Agnes P. R. Groome pledged a money donation to the Woman's Medical College of Pennsylvania, a corporation of the first class, not for profit. At her death this obligation had not been entirely discharged and, upon its face, it was barred by the statute of limitations. At the audit of her executors' account, however, the college sought to toll the statute by testimony of two members of the Board of Corporators of the college. The auditing judge ruled that these witnesses were disqualified under the Evidence Act of May 23, 1887, P. L. 158, sec. 5(e),[1] and dismissed the claim. Upon exceptions to the adjudication, the majority of the judges of the Orphans' Court sustained the ruling of the auditing judge. This appeal followed.

In concluding that claimant's witnesses were disqualified under the Act of 1887, the auditing judge held that a direct pecuniary interest is not necessary to render a witness "adverse" and that ". . . the directors of a corporation are fairly within the letter and spirit of the statute disqualifying the surviving or remaining party to a contract." In passing upon the exceptions to the adjudication, the majority opinion of the court below, while stating that the exceptions could well be dismissed upon the theory of stare decisis,[2] based dismissal of the exceptions upon different grounds: first, that members of an eleemosynary corporation, which has no shareholders, are in the same category as shareholders of a corporation for profit in that they are the owners of the corporation and, therefore, claimant's witnesses, as co-owners of the corporation and its assets,

---

[1] The Act of May 23, 1887, P. L. 158, sec. 5(e) provides: "Nor, where any party to a thing or contract in action is dead . . . shall any surviving or remaining party to such thing or contract, or any other person whose interest shall be adverse . . . be a competent witness to any matter occurring before the death . . ."

[2] *Aquetong Hall Assn. v. James*, 100 Pa. Superior Ct. 440, cited with approval in *Broderick Co. v. Emert*, 110 Pa. Superior Ct. 327, 332.

are essentially actual parties to the controversy and their interest, as such, undoubtedly adverse; and secondly, even if they are mere agents of the corporation, they were not authorized to collect this pledge from Mrs. Groome. The dissenting judges confined themselves to a discussion of the first point raised by the auditing judge, reaching an opposite conclusion.

To consider first the majority opinion of the court below, it has been expressly held by this court in the case of *Hempstead v. Meadville Theological School,* 284 Pa. 147, 153, that ". . . the board of trustees [of an eleemosynary corporation], though they are a self-perpetuating body, and have no stockholders to control them, are not *owners* of the assets of the corporation, but only trustees to manage them for the public good, in accordance with, and in a manner not destructive of, the purposes specified in the charter. In this light the powers given to them must be construed. Although they may 'transact all and every business . . . as fully, amply and effectually as any person or persons . . . have the right and power to manage their own concerns,' it is expressly declared that all this shall be done for 'the proper use, benefit and support of the said school,' and that they must 'hold, enjoy and exercise all such powers, authorities, jurisdictions and privileges . . . to carry the object of the school into effect.' " See also, *Sorg v. First German Congregation,* 63 Pa. 156, 162. This is so whether they be called members of a Board of Trustees, a Board of Corporators, or a Board of Directors. Furthermore, they have none of the attributes of a shareholder, especially in view of the fact that in the case of dissolution of the corporation, ". . . property devoted to . . . educational or charitable uses shall not be diverted from the objects for which it was donated, granted, bequeathed or devised.": Nonprofit Corporation Law of May 5, 1933, P. L. 289, Art. X, sec. 1001(C), (declaratory of prior law), as amended by the Act of July 2, 1937, P. L. 2838.

254

As to the argument that claimant's witnesses were not specifically authorized to collect this pledge from Mrs. Groome, and, therefore, were not authorized to receive communications concerning it on behalf of the corporation, the record reveals that the Board of Corporators as a whole engaged in a campaign to raise money for the purpose of constructing a new building. It was within the power of each member to solicit contributions and pledges. Consequently, each was impliedly authorized to receive communications concerning such matters on behalf of the corporation. The pledge here in question was made during this campaign, at a time when claimant's witnesses were, as now, members of the Board of Corporators. As such members of the corporation, they were the recipients of Mrs. Groome's frequent promises, made after the expiration of the statute of limitations, to pay the full amount of her pledge.

Turning to the adjudication of the auditing judge, we cannot sustain his conclusion that ". . . the directors of a corporation are fairly within the letter and spirit of the statute disqualifying the surviving or remaining party to a contract." *Hempstead v. Meadville Theological School,* supra, establishes that members of the Board of Corporators of an eleemosynary corporation are the executive representatives of the corporation, as are directors of a corporation for profit. That is to say, they are only agents of the corporation to conduct its business, and are not the corporation. Being agents, it is well settled that they are not parties to the thing or contract entered into on behalf of the corporation, their principal: *Eaton v. N. Y. Life Ins. Co.,* 315 Pa. 68, 80; *Canon v. Penna. Trust Co.,* 305 Pa. 422, 424; *Sargeant v. National Life Ins. Co.,* 189 Pa. 341, 345. In the instant case the college is the "surviving or remaining party to a contract," not the members of the Board of Corporators.

In interpreting the word "adverse," it must be remembered that the Act of 1887 was an enabling statute and that persons competent to testify before its enactment remained such and were unaffected by its provisions: *Dickson v. McGraw Bros.*, 151 Pa. 98, 100. Accordingly, if claimant's witnesses could have qualified before the passage of this act, their testimony should have been admitted at the audit. In this connection, the following description of a disqualifying interest was given in the case of *Braine v. Spalding*, 52 Pa. 247, 248 (1866) : "It is only a fixed vested interest, that disqualifies. The true test of the interest of a witness is that he will either gain or lose, as the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action. It must be a present, certain and vested interest, and not an interest uncertain, remote or contingent: Greenleaf's Ev., vol. i. §390."[3] The case of *Philadelphia Ins. Co. v. Washington Ins. Co.*, 23 Pa. 250, 254, illustrates an application of this test, holding that the president of an insurance company, who was neither a shareholder nor a party to the record, was a competent witness on behalf of the corporation. And the case of *Sorg v. First German Congregation*, supra, at p. 162, held that ". . . the trustees of charitable or religious societies, having no personal and private interest in the property holden by the corporation, are competent witnesses in any action in which the corporation is a party: 1 Greenl. on Ev. §333." In view of the holdings of these cases, it cannot be said that claimant's witnesses were "adverse" within the meaning of the Act of 1887.

The term "disinterested witness" has no application here. Cases involving wills gave rise to an interpreta-

---

[3] Cited with approval in *Dillon's Est.*, 269 Pa. 234, 240, and in *Shobert v. Brookville Bank and Trust Co.*, 132 Pa. Superior Ct. 365, 371.

tion of this term under the Mortmain Act of April 26, 1855, P. L. 328.[4] Subsequently, the description of a disqualifying interest under the Act of 1855 was declared to be appropriate in determining the competency of a witness under the Evidence Act of 1887.[5] This was error. No analogy may be drawn between the two acts, since the purpose behind their enactment were entirely different. "In *Kessler's Est.*, 221 Pa. 314, we call attention to the fact that (pp. 320, 321) 'the Act of 1855 is a remedial statute,' and the evil it has in mind is to prevent 'the importunities of designing persons,' interested in charities, at or near the time of the impending death of a testator. Then (p. 323), we say: 'The words "disinterested witnesses," used in this act, must be read and understood in connection with the subject-matter of the statute, the evils to be avoided, the requirements intended to safeguard the rights and property of persons approaching death, and the remedy to be provided in such cases' ": *Channon's Est.*, 266 Pa. 417, 422. We have already pointed out that the Evidence Act of 1887 was an enabling statute, and that no one who was competent to testify before its enactment was rendered incompetent thereafter.

Decree reversed and the record remitted to the court below for proceedings in conformity with this opinion.

---

[4] The Act of April 26, 1855, P. L. 328, provides: "Section 11. That no estate, real or personal, shall hereafter be bequeathed, devised, or conveyed to any body politic, or to any person in trust for religious or charitable uses, except the same be done by deed or will, attested by two credible, and at the time, disinterested witnesses . . ."

The provision of this act requiring "disinterested witnesses" was retained in the amending Act of June 7, 1911, P. L. 702, and was adopted by section 6 of the Wills Act of June 7, 1917, P. L. 403. It has been omitted, however, from the recent amendment to the Wills Act, the Act of July 2, 1935, P. L. 573.

[5] *Aquetong Hall Assn. v. James,* supra, cited with approval in *Broderick Co. v. Emert,* supra (see footnote No. 2); and in the adjudication of the auditing judge in the instant case.