## Commonwealth Trust Company, Admr., *v.* Szabo, Appellant.

Argued October 2, 1957. Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

rear-gument refused February 3, 1958.

*Sidney Baker,* with him *Daniel Krause* and *Krause & Boreman,* for appellants.

*Francis Taptich,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, November 22, 1957:

This appeal presents a dispute between a decedent's estate and decedent's three children concerning the ownership of certain money.[1]

Stephen Szabo, a resident of Allegheny County, died, testate, on February 5, 1953, survived by his wife, Marie Szabo, and three children, Stephen Szabo, Irene Hayek and William Szabo. By his will decedent left his entire estate to his wife. Letters of administration c.t.a. were originally granted to Marie Szabo; after her removal as administratrix, letters of administration d.b.n.c.t.a. were granted to the Commonwealth Trust Company.

During her tenure as administratrix c.t.a. Marie Szabo instituted an equity action[2] against the three children and the Mellon National Bank and Trust Com-

---

[1] The amount of this money is also in dispute.

[2] After its appointment her successor continued to prosecute the suit.

pany (herein called Mellon Bank). The basis of this equity action[3] is that decedent had $10,000 in cash in his room prior to his removal to the hospital—approximately two weeks before his death; Stephen Szabo, without decedent's knowledge or consent, removed this money; upon discovery that the money was missing, William Szabo and Irene Hayek, the two other children, demanded a return of the money whereupon Stephen Szabo turned over to them $7000; on January 22, 1953, William Szabo and Irene Hayek rented a safe deposit box in the Mellon Bank (Braddock Branch) wherein they placed $7000; despite the fact that the safe deposit rental contract provided only for joint access, the Mellon Bank permitted Irene Hayek alone to enter the box on January 8th and January 11th, 1954, without William Szabo's knowledge or consent; the box was changed from the names of Irene Hayek and William Szabo to Irene Hayek and Carl Hayek, her husband, and now contains $6000 the return of which to the estate has been refused. The relief requested in this action was three-fold: (1) that Stephen Szabo be declared trustee of $3000 and directed to return it to the estate, (2) that Irene Hayek and William Szabo be declared trustees of $7000 and directed to return it to the estate and (3) that the Mellon Bank be restrained from permitting access by anyone to the safe deposit box.

With the exception of William Szabo, all the defendants filed answers. The Mellon Bank's answer, in substance, admitted the impropriety of allowing Irene Hayek to enter the safe deposit box, disavowed interest in the money in the box, averred that it was in the position of a stakeholder and requested that the money be paid into court to await the determination of the con-

---

[3] According to the allegations set forth in plaintiff's complaint:

troversy. The answers of Irene Hayek and Stephen Szabo, although separate, were substantially the same: that Stephen Szabo did not take any money without decedent's authority; that decedent, prior to his hospitalization and in his own room, delivered to Stephen Szabo an undetermined sum of money, wrapped in a package, with instructions that he hold the package for decedent until his return from the hospital, or, in the event of his death, "to divide it as he, Stephen Szabo, saw fit"; shortly after receiving this package Stephen Szabo informed his brother and sister that he was holding this money and the three children agreed that it should be kept in a safe deposit box in the names of William Szabo and Irene Hayek and for that purpose a safe deposit box was rented at the Mellon Bank and the money placed therein; almost a year later Irene Hayek had the box transferred into the names of her husband and herself and the money, now amounting to $6000, is in that box; they categorically deny plaintiff's right to this money, alleging that decedent made a gift causa mortis of this money to Stephen Szabo.

After a hearing, the chancellor found that decedent had not made a gift causa mortis to Stephen Szabo of this money amounting to $6000 but had delivered it to him as a bailee for safekeeping and concluded that the money belonged to decedent's estate, that defendants', William Szabo and Irene Hayek, possession of the money was in trust for the estate and he directed the Mellon Bank to deliver the money to the estate. These findings and conclusions were approved by the court en banc and from its decree this appeal was taken.

In passing upon the questions raised on this appeal we must adhere to the well-established rule that a chancellor's findings of fact, approved by a court en banc, have all the force and effect of a jury's verdict

if they are supported by adequate evidence and ordinarily will not be disturbed on appeal: *Gagnon v. Speback,* 389 Pa. 17, 20, 131 A. 2d 619; *Mann v. Mann,* 387 Pa. 230, 233, 127 A. 2d 666; *Eways v. Reading Parking Authority,* 385 Pa. 592, 601, 124 A. 2d 92; *Brightbill v. Boeshore,* 385 Pa. 69, 79, 122 A. 2d 38. However, the chancellor's "conclusions, whether of law or ultimate fact are no more than his reasoning from the underlying facts and are reviewable", especially "where the underlying facts themselves are not in esse but are matter of inference and deduction": *Kelly v. Philadelphia,* 382 Pa. 459, 465, 115 A. 2d 238; *Eways v. Reading Parking Authority,* supra, p. 601; *Peters v. Machikas,* 378 Pa. 52, 56, 105 A. 2d 708. Furthermore, a chancellor's findings of fact, even though approved by a court en banc, need not be accepted as conclusive if there is no evidence to support them or if they are based on an inference erroneously taken (*Essick et al. v. Shillam et al.,* 347 Pa. 373, 32 A. 2d 416; *Potter et al. v. Brown et al.,* 328 Pa. 554, 563, 195 A. 901), or where the evidence, in order to prevail, must be clear, precise and indubitable or must meet some other prescribed standard (*Stafford v. Reed,* 363 Pa. 405, 407, 70 A. 2d 345).

Bearing in mind these legal principles, we must carefully examine the instant record to determine whether the chancellor's findings and conclusions were supported by adequate evidence and based on inferences properly taken. Certain facts are undisputed: (1) decedent, two weeks prior to his death, had in his home a certain amount of money; (2) this money, in some manner or other, came into the possession of Stephen Szabo; (3) this money, at least in part, came into the possession, first, of Irene Hayek and William Szabo, and then, of Irene Hayek and Carl Hayek, her husband; (4) the amount now in the safe deposit box

—$6000—represents part, if not the whole, of the money. In dispute are the following issues: (1) how much money passed from decedent's possession to that of Stephen Szabo? (2) in what manner did possession pass? (3) does the amount in the box represent all or only a part of the original money, and, if only a part, what happened to the rest? Appellants contend that $6000 passed from the decedent to Stephen Szabo, that decedent made a gift causa mortis of that money to Stephen Szabo, and that the amount in the box represents all the money that was transferred. Appellee contends that $10,000 passed from the decedent to Stephen Szabo, that it was taken by him from the decedent's possession without the latter's knowledge and consent, and that $3000 was kept by Stephen Szabo and $7000, originally, by Irene Hayek and William Szabo but, now, by Irene Hayek. The chancellor found that $6000 passed from decedent to Stephen Szabo, that it was given by the decedent to Stephen Szabo for safe-keeping and that the money now in the safe deposit box represents all the money which belonged to the decedent.

The evidence consists of certain portions of the pleadings received in evidence together with the testimony of the three individual defendants. The admissions which arise from the pleadings in evidence are: the date of decedent's death, that under decedent's will the widow was the sole beneficiary, that while decedent was in the hospital, Stephen Szabo informed his brother and sister that he was holding certain money given him by decedent, that this money was placed in a safe deposit box in the names of the brother and sister and the safe deposit box now contains $6000.

Plaintiff's only oral testimony came from William Szabo, a defendant, called as of cross-examination. While objection was made in the court below to this

witness' competency,[4] the plaintiff, by calling him as of cross-examination, and, by examining him as to matters which occurred during the decedent's lifetime, rendered him a competent witness on all relevant matters and removed his prima facie disqualification.[5] This witness testified as follows: on the night decedent was taken to the hospital Stephen Szabo told him that he had the money, that "he was to take care of the money" and the money had been turned over to Irene Hayek; on February 2, 1953—three days prior to his father's death—in company with Irene, he opened the safe deposit box, counted the money amounting to $7000 and then visited the decedent in the hospital;[6] at the hospital, in Irene's presence, he asked decedent how many packages of money he had and to this inquiry the decedent made no response; he then asked decedent if he had one package and again the decedent did not respond; he then asked decedent if he had two packages of money and the decedent blinked his eyelids and nodded his head up and down; the witness then asked the decedent if he had $7000 and the decedent did not respond; the witness then asked decedent if he had $10,000 and decedent nodded his head in affirmation; on the evening of the same day,[7] in the presence of Stephen Szabo and the latter's wife, he went through exactly the same performance with the

[4] Under the so-called "dead man's rule": Act of May 23, 1887, P. L. 158, §5 (e), 28 PS §322.

[5] Act of May 23, 1887, P. L. 158, §6, 28 PS §324. *Gallagher, Admr. v. Rogan*, 330 Pa. 545, 549, 550, 199 A. 168; *Hughes's Estate (No. 1)*, 319 Pa. 321, 325, 179 A. 577; *Watkins v. Hughes*, 206 Pa. 526, 529, 56 A. 22; *Bair v. Frischkorn Bros.*, 151 Pa. 466, 467, 25 A. 123; *Corson's Estate*, 137 Pa. 160, 168, 20 A. 588.

[6] This portion of the witness' testimony was admissible only as against Irene Hayek.

[7] This portion of the witness' testimony was admissible only as against Stephen Szabo.

decedent and the decedent reacted exactly as he had done that afternoon; shortly after decedent's death, Stephen told him he had received $10,000. Upon examination by defendant's counsel, this witness stated that, while decedent was unable to talk on the two occasions related in the cross-examination, he was mentally sound. This witness did not see decedent give Stephen Szabo the money nor Stephen Szabo give Irene Hayek the money.

When Irene Hayek, another defendant, was called to testify on direct examination her competency under the so-called "dead man's rule" was questioned, and it is necessary that we determine now whether or not she was competent to give any testimony.[8]

---

[8] In *Hendrickson Estate*, 388 Pa. 39, 44, 45, 130 A. 2d 143, we stated: "Section 4 of the Act of 1887, supra, 28 PS §314, states the general rule that no 'interest, or policy of law, . . . shall make any person incompetent as a witness.' To this rule the statute makes four exceptions, with only the last of which we are concerned in this appeal. This fourth exception—so far as pertinent herein—disqualifies as a witness a 'surviving' or 'remaining' party or 'other person' whose interest is adverse to one who is dead and proscribes any testimony by such party or person against the deceased as to matters which occurred before death if the deceased had any right in the subject matter which has passed to a party of record. This disqualification extends to two classes of witnesses (surviving parties to a transaction and any other person) whose interest is adverse to deceased: Groome's Estate, 337 Pa. 250, 254, 255, 11 A. 2d 271; Broderick Co. v. Emert, 110 Pa. Superior Ct. 327, 332, 168 A. 512.

"Under this exception three conditions must exist before any such witness is disqualified: (1) *the deceased must have had an actual right or interest in the matter at issue*, i.e. an interest in the immediate result of the suit; (2) *the interest of the witness— not simply the testimony—must be adverse;* (3) *a right of the deceased must have passed to a party of record who represents the deceased's interest.*"

The decedent did have an actual right or an interest in the matter at issue, which right or interest had passed to plaintiff, who represents his interest on the record, and, unquestionably, this witness' testimony is adverse to the decedent's interest. The question is, however, whether Irene Hayek's interest is an "adverse interest" within the terms of the statute. Cf: *Gaston Estate,* 361 Pa. 105, 109, 110, 62 A. 2d 904; *Katz, Admrx. v. Lockman,* 356 Pa. 196, 199, 200, 51 A. 2d 619; *Ringer, Admrx. v. Finfrock,* 340 Pa. 458, 462, 463, 17 A. 2d 348; *Weaver, Exr. v. Welsh,* 325 Pa. 571, 576, 577, 191 A. 3. The test for determining a witness' interest has long been recognized: "The true test of the interest of a witness is that he will either gain or lose, as the direct legal operation and effect of the judgment, or that the record will be legal evidence for or against him in some other action": *Braine v. Spalding,* 52 Pa. 247; *Patton v. Patton,* 351 Pa. 6, 9, 10, 39 A. 2d 921; *Groome's Estate,* 337 Pa. 250, 255, 11 A. 2d 271; *Dillon's Estate,* 269 Pa. 234, 240, 111 A. 919.[9]

To determine Irene Hayek's competency we must examine the respective positions of the parties. Under plaintiff's theory Irene Hayek, as possessor of the money, should be declared a trustee thereof and directed to return it to the estate for distribution under the decedent's will; if, therefore, plaintiff prevails Irene Hayek would not share any part of this money. Under the theory of the two individual defendants who put in a defense—Irene Hayek and Stephen Szabo—while Irene Hayek has possession of the money, yet

---

[9] In *Billow v. Billow, Liquidator (et al.),* 360 Pa. 343, 346, 61 A. 2d 817, we stated: "The mere fact that a witness, for personal reasons, may be unfriendly to the decedent's cause and partial to that of his adversary is wholly immaterial, for, while that circumstance may affect his credibility, it has nothing whatever to do with his competency: Packer v. Noble, 103 Pa. 188, 195, 196."

ownership thereof is in Stephen Szabo, either as a donee of a gift causa mortis, or, as a trustee to divide as he sees fit; if, therefore, the individual defendants prevail the money would belong to Stephen Szabo to keep for himself or divide as he chose and Irene Hayek would share only if Stephen Szabo saw fit to do so. The fact that Irene Hayek might *possibly* share the money, depending upon Stephen Szabo's generosity, does not render adverse her interest to the decedent's estate within the terms of the statute, but merely affects her credibility and the probative value of her testimony.[10] Standing neither to gain nor lose as the direct legal effect of a judgment against her and not subject to having the record be legal evidence against her in some other action, she was a competent witness under the statute.

The testimony of this witness may be summarized as follows: in company with Stephen Szabo, she went to the Mellon Bank on January 22, 1953 to rent a safe deposit box in the names of her two brothers and herself, but, upon the bank's refusal to rent a box in three names, a box was rented in the names of William Szabo and herself; on this occasion Stephen Szabo placed two packages containing money in the box, the source of or the amount thereof being unknown to the witnesses; on February 2, 1953, in company with William Szabo, she again went to the bank and at this time William Szabo signed the rental agreement and counted the money in her presence, there being $7000 in the two packages; after leaving the bank, the witness and William Szabo visited decedent in the hospital where William Szabo tried to arouse the decedent by slapping

[10] The interest must "be a fixed vested interest, a remote or contingent interest will not answer": *Dillon's Estate*, supra, p. 240.

him and asking him questions which provoked no response because the decedent, in the witness' opinion, was in a coma; about two weeks before decedent died, the witness asked him why he did not put his money in a bank for safekeeping, to which he responded that "it was in good hands", that, "he had instructed . . . Stephen as to what to do with it" and that he wanted it kept out of William Szabo's hands; eleven months after decedent's death the witness, accompanied by her husband, went to the bank, renewed the box rental and took from the box one package containing money—all that she found—to her home where she counted it and found that it contained $2,090; this money was replaced in the box and, on January 12, 1954, in the presence of several bank officials, the box was opened and found to contain two packages of money amounting to $6000; upon cross-examination, the witness admitted that while William Szabo counted the money on February 2, 1953 she made notations which totaled $7000; Stephen had told his sister that decedent had entrusted the money to him the night before decedent was removed to the hospital.

When Stephen Szabo was called to testify his testimony was objected to upon the ground that he was an incompetent witness. He was clearly incompetent under the so-called "dead man's rule" to testify as to any matter or transaction which took place prior to the decedent's death, unless his incompetency was removed by other evidence introduced at trial. If a transaction occurred between the decedent and a living witness or in the presence or hearing of such witness, who has been called to testify against the survivor or person whose interest is adverse, the latter becomes competent to testify as to such matter, provided that such living witness is called by and in the interest of the party

representing the decedent and adversely to the surviving party.[11]

Inasmuch as William Szabo was called by plaintiff and testified to an alleged conversation which took place between himself and decedent in Stephen Szabo's presence at the hospital on February 2, 1953, and also to certain admissions allegedly made by Stephen Szabo, then Stephen Szabo became competent to testify only as to such conversations and admissions as well as anything which occurred after decedent's death. In all other respects Stephen Szabo's testimony was incompetent.

Stephen Szabo testified that his father did not respond to any questions addressed to him by William Szabo at the hospital on February 2, 1953 and denied the admissions allegedly made. Particularly significant is that portion of his testimony which reads as follows: "Q. Are you, at this time, making a claim for this money as your sole property? A. Yes, sir. Q. Or are you holding this as trustee for the children? A. It all depends. . . . A. As trustee to be divided as I see fit."

After an examination of the competent testimony on the record we are convinced that the chancellor's findings of fact 1, 2, 3, 4, 6, 7, 9, 10 and 11 are supported by sufficient and wholly adequate evidence.

As to the chancellor's finding of fact 5 we are convinced that such finding of fact is not supported by any competent evidence whatsoever. The only testi-

---

[11] Act of June 11, 1891, P. L. 287, §1, 28 PS §325. *Bowman's Estate*, 301 Pa. 337, 342, 343, 152 A. 38; *Phillips's Estate*, 271 Pa. 129, 133, 114 A. 375; *Kauss v. Rohner, Admr.*, 172 Pa. 481, 488, 33 A. 1016; *Thomas v. Miller, Exr.*, 165 Pa. 216, 220, 30 A. 928; *Krumrine, Exr. v. Grenoble et al.*, 165 Pa. 98, 107, 30 A. 824; *Volkwein v. Volkwein, Exr.*, 146 Pa. Superior Ct. 265, 269, 22 A. 2d 81; *Est. of Eicher*, 109 Pa. Superior Ct. 393, 396, 167 A. 466; *Morrison v. Curry*, 43 Pa. Superior Ct. 648, 653.

mony as to what transpired on January 21, 1953, the day before decedent left for the hospital, comes from Stephen Szabo who in this respect was clearly an incompetent witness. With the elimination of Stephen Szabo's testimony there was no evidence of record to support finding of fact 5 and it must be set aside. The effect of eliminating Stephen Szabo's testimony is an elimination of any evidence as to the manner in which the possession of the money passed from decedent to Stephen Szabo. Such unexplained possession of the money obtained shortly before decedent's death leads to exactly the same result reached by the chancellor, to wit: that there was no gift causa mortis.

That portion of finding of fact 8 which reads as follows: "By this count, it appeared that there was $7000, but this was a mistake, the correct amount being $6000" was clearly incorrect. The competent testimony of record clearly and positively proves that on February 2, 1953 the amount of money contained in the two packages placed in the safe deposit box was $7000, not $6000.[12] The only evidence concerning $6000 is that when the box was opened eleven months after decedent's death there was then only $6000 therein. Particularly significant in this respect is the statement of the attorney for the Mellon Bank at the conclusion of the testimony: "The Court: What evidence is to be inferred, that they counted it? Mr. Helwig: I think that the evidence establishes in the packages which Stephen gave to Irene which she deposited in her box, at least on the day that the money was counted, there was $7000, if believed. It is a question of credibility now and I see no point on insisting upon the objections which I had made which were just to protect the

---

[12] Both William Szabo and Irene Hayek testified unequivocally that there was $7000 at that time in the box, i.e. they counted it.

record." Such portion of finding of fact 8 clearly was not supported by adequate evidence and would have had to be set aside, had an appeal therefrom been taken by the appellee.

Conclusions of Law 1 and 2 of the chancellor are fully justified by the evidence. It is clear that decedent did not make any gift to Stephen Szabo of this money but that it was delivered to him, if at all, simply as a bailee for safekeeping. It naturally follows that this money belongs to the decedent's estate and must be returned to it.

The decree of the court below is affirmed. The costs of this proceeding are to be borne equally by Stephen Szabo and Irene Hayek.

With the exception of the competency of Irene Hayek, Mr. Justice BELL concurs in the opinion.