## Philadelphia *v.* Philadelphia Transportation Co., Appellant.

504

Argued April 26, 1962. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN and O'BRIEN, JJ.

*Peter Platten*, with him *Tyson W. Coughlin, Hamilton C. Connor, Jr.*, and *Ballard, Spahr, Andrews & Ingersoll*, for appellant.

*William T. Coleman, Jr.*, with him *Harold E. Kohn*, Special Counsel, and *David Berger*, City Solicitor, for City of Philadelphia, appellee.

OPINION BY MR. JUSTICE O'BRIEN, May 21, 1962:

In July of 1957, the City of Philadelphia, appellee, and Philadelphia Transportation Company, appellant, entered into an agreement relating to the operation of transit facilities in the City. The agreement provided, in part, that: "10. A Service Standards Committee

shall be created immediately consisting of three members. One member shall be appointed by the City and one member shall be appointed by the Company, each to serve at the will of the appointing authority. The third member, who shall be a man experienced in the field of mass public transportation, shall be selected by mutual agreement between the City and the Company from a panel to be prepared by the City, . . .

"11. The Service Standards Committee shall have final jurisdiction over changes in the Company's routes, extension of routes, establishment of new routes and abandonment of existing routes and over the Company's *service standards,* subject only to any necessary approval of the Pennsylvania Public Utility Commission." (Emphasis supplied.)

In accordance with the foregoing provisions of the agreement, the Service Standards Committee was created and embarked upon the performance of its mandated duties. In July of 1959, appellee referred to the Committee a request that appellant air condition some of its buses. As a result of this request, the Committee, in May of 1960, entered its decision as follows: "The Service Standards Committee believes that it is desirable for the Company to make a start in the area of air conditioned buses in order to determine the value and costs of air conditioning in Philadelphia. In order to accomplish this, the Committee directs the Company to install air conditioning on approximately 25 of its buses (or purchase approximately 25 air conditioned buses) for operation during the summer of 1960."

Upon appellant's refusal to comply with the committee's directive, appellee commenced an action in equity praying for an order directing appellant to comply with the directive of the committee. The chancellor entered his adjudication and decree nisi granting the requested relief. Appellant filed exceptions which

were dismissed by the court en banc, which entered a final decree, in effect, directing compliance with the decision of the committee. It is from this final decree that appellant appeals to this Court.

The question which is dispositive of the case at bar is the meaning of the term "service standards" as used in the agreement between the parties. Appellant urges that the term does not and was not intended to encompass such things as air conditioning. It contends that "service standards" means only such things as the frequency of service, ratio of seats to passengers, routing etc. Appellee, on the other hand, argues that the term does include such matters as heating and ventilating of transit vehicles, kinds and types of vehicles to be employed and the meaning contended for by appellant is a proper meaning for the term "loading standards", not "service standards".

The chancellor made a finding of fact that the term "service standards", as used in the agreement, includes the matter of air conditioning of buses, which finding was affirmed by the court en banc. "In passing upon the questions raised on this appeal we must adhere to the well-established rule that a chancellor's findings of fact, approved by a court en banc, have all the force and effect of a jury's verdict if they are supported by adequate evidence and ordinarily will not be disturbed on appeal." *Commonwealth Trust Co. v. Szabo,* 391 Pa. 272, 276, 277, 138 A. 2d 85 (1957); *Sechler v. Sechler,* 403 Pa. 1, 169 A. 2d 78 (1961); *Shydlinski v. Vogt,* 406 Pa. 534, 179 A. 2d 240 (1962).

The issue here is quite narrow and turns, as stated above, upon the meaning of the term "service standards" as used in the agreement. If appellee's contention as to its meaning is correct, the committee properly considered appellee's request and, having reached a conclusion which has not been shown to be arbitrary or capricious, is entitled to have its decision carried

out. If appellant's contention is correct, the committee had no jurisdiction to consider appellee's request and its decision is of no effect. We, being bound by the rule of law set out above, have only to inquire into whether the chancellor's finding, sustaining appellee's contention, approved by the court en banc, is supported by adequate evidence.

Our review of the record convinces us that there is ample evidence supporting the chancellor's finding of fact. The testimony is overwhelming that the term "service standards" is understood in the public transit industry to encompass air conditioning of transit vehicles. On this record, it would be difficult indeed to come to any other conclusion.

Since we find that the chancellor's finding on the issue which is the touch stone of the controversy, approved by the court en banc, is supported by the evidence, we affirm the decree of the court below.

Decree affirmed; costs to be borne by appellant.

Mr. Justice COHEN dissents.