Pittsburgh No. 8 Coal Corporation, Appellant, *v.* Newcomer et al., Exrs.

Argued September 27, 1950. Before DREW, C. J., STERN, STEARNE, JONES, LADNER and CHIDSEY, JJ.

*Linn V. Phillips, Sr.,* with him *Phillips, Wagoner, Phillips & Board,* for appellant.

*Edward Dumbauld,* with him *T. L. Morgan,* for appellees.

OPINION BY MR. JUSTICE LADNER, November 13, 1950:

Plaintiff is a West Virginia corporation. Defendants are the executors of Frank C. Newcomer, a deceased officer of the corporation. Plaintiff filed a bill in equity asking for an accounting on the basis of an alleged misappropriation of corporate funds and bonds which are in the possession of the defendants. The bill was dismissed by the chancellor because plaintiff had failed to prove the averments of his bill and for the further reason that the complaint was barred by laches. The court en banc on exceptions sustained the chancellor's action.

Plaintiff was organized in 1920. From its inception its principal office has been in Uniontown, Pennsylvania, and its bank account and records have been kept there. It has outstanding 2366 shares of common stock originally of a par value of $100.00 each but later reduced to $10.00 each and 100 bonds in the prin-

cipal amount of $500.00 each, secured by a deed of trust on its West Virginia property.

The corporation was never successful and found it necessary to borrow money from its stockholders. Its bonds have been in default for a long time. From the time of its organization until August 27, 1946, Frank C. Newcomer (defendants' decedent) was a stockholder of the corporation, a member of its board of directors, its secretary and treasurer and its attorney. He had charge of the books of the corporation, attended to the correspondence, did the legal work and permitted his office to be used as the office of the corporation. After his death all of the books and correspondence of the corporation were turned over to George P. Hoover, president of the corporation.

An attempt was made to audit the books of the corporation for the period from August 1, 1923, to August 27, 1946, the date of Frank C. Newcomer's death. The auditor, however, was unable to balance the books because the records were not properly kept.

George P. Hoover, who filed this bill of complaint on behalf of the corporation was president of the corporation from 1930 and a member of its board of directors from 1928.

With respect to the bonds alleged to belong to the plaintiff corporation and in the possession of the defendant there was the following evidence. The total issue was $50,000.00, secured by a deed of trust of the company's West Virginia coal lands. The trustee of the mortgage was the Citizens Title and Trust Co. That Trust Company was liquidated in 1942 and Frank C. Newcomer and Margaret E. Hoover, wife of the plaintiff's president, were named as successor trustees. The accountant testified that he had found records for the sales of $39,500.00 of the bonds and a deposit of the receipts from these sales, but not of the other $10,500.

He could not say, however, that they had ever been paid for since the records were so inadequate.

At the trial plaintiff called as a witness George W. Tanner, Jr., Esq., who became a stockholder of the corporation in order to attend a stockholder's meeting in 1942 on behalf of a client who held bonds in the company. The court excluded testimony of Tanner regarding conversations with the decedent concerning the financial affairs of the corporation as incompetent because of the Act of May 23, 1887, P.L. 158, Section 5(e), 28 P.S. 322.

On this appeal we are asked to pass on four questions which will be considered in order. The first question is whether the plaintiff's proofs were sufficient to sustain its action for an accounting.

Whatever might have been the duty of the decedent, Frank C. Newcomer, by reason of his position of trust as treasurer, director and attorney for the corporation to explain what he did with the assets entrusted to him, no such duty can after his death be justly imposed upon his personal representative. An executor can account only for what he actually received from the dead hand of his decedent. Anyone claiming that money is due from the decedent has the burden of proving his claim or identifying the particular property claimed. This burden was not met by the plaintiff accountant's estimates made from corporate records and books improperly kept, admittedly incomplete, some of them, including bank books missing for a number of years. This witness endeavored to arrive at a sum allegedly due the plaintiff by charging against decedent all the cash that *should* have been received based in part on what appeared in the books and in part on outside inquiries. As against the sum so arrived at he gave such credit as appeared in the corporate books. Of course were the decedent alive this might have been sufficient to shift the burden to him of showing either that the

money he should have received was never in fact received, or if received, paid out for proper purposes or that other additional credits were due him. No such duty can in reason be placed on a personal representative. The failure of the plaintiff's case results from its neglect to bring its action in the lifetime of decedent.

Second. The second proposition is much the same. In 1923 the plaintiff corporation issued $50,000 worth of bonds secured by a mortgage or trust deed on its West Virginia property. The original trustee for the bondholders was the Citizens Title & Trust Co., which was taken over by the Secretary of Banking in 1929 and finally liquidated in 1942. The decedent and Margaret E. Hoover, wife of plaintiff's president, were named as successor trustees. The books showed entries of the names of purchasers of $39,500 worth of bonds leaving $10,500 worth unaccounted for by the records. The title records show also that decedent had cashed coupons on two of the bonds which accountant testified there was no notation in the books as having been sold, but admitted he did not know and could not tell from the books whether the bonds in question had ever been paid for or not. It further appears from the corporate records that decedent had cashed coupons on these bonds since 1942 and as the learned court below points out it moreover appeared from plaintiff's own minute book, page 42, that all of these bonds except one were outstanding March 27, 1942, presumably for value. What we said concerning the first question argued is equally applicable to this. We cannot conjecture in absence of proof that decedent misappropriated the bonds in question in view of the record in the minute book and the fact that he was only one of two trustees, especially in view of the admission of the plaintiff's accountant that because of the incompleteness of the corporate books and records he could not tell whether decedent paid for the bonds or not.

Third. The third question complains of error on the part of the chancellor in ruling incompetent the testimony of George W. Tanner, Jr., on the ground that he was a stockholder of the plaintiff corporation and therefore barred by the Competency of Witness Act of 1887 (28 P.S. 322). We think the ruling of the chancellor was correct and in accordance with *Swoope's Estate,* 317 Pa. 584, 177 A. 748. The appellant relies on *Groome's Estate,* 337 Pa. 250, 11 A. 2d 271, but that case has no application. All that was ruled in that case was that a member of the board of trustees of an eleemosynary corporation was not disqualified to testify because trustees are not the *owners* of such a corporation nor of its assets, whereas stockholders of a profit corporation or corporation of second class are its owners.

Finally, it is argued the court below erred in holding the plaintiff's right to relief was barred by its own laches. In answer to this contention we cannot do better than to quote with approval what was so well said by the learned President Judge CARR in his opinion for the court en banc, viz, "Not only does the evidence fail to substantiate the plaintiff's charges, but time has so obscured the exact facts of the case that they are no longer ascertainable. Many of the participants in the transactions in question have since died, and banks in which the funds of the corporation were deposited have been liquidated and their records destroyed. It therefore seems clear that no just account could now be stated by anyone, and accordingly a decree requiring an accounting by the defendants would be inequitable: Patton, et al., v. Commonwealth Trust Co., Executor, 276 Pa. 95.

"The bill of complaint was filed in the name and on behalf of the corporation by Hoover, as its president. He has been its president since 1930, and a member of its board, of its board of directors since 1928. As president he was its chief executive officer, charged with

the duty of guarding its interests and therefore of examining all the acts of its officers and its records. Being also a director, he shared the ultimate authority and responsibility for its management. It is, moreover, plainly evident that everything alleged to have been discovered but recently could just as readily have been known while the decedent lived and was in a position to defend himself. In these circumstances the bill is obviously barred by laches. Kinter v. Commonwealth Trust Co. et al., 274 Pa. 436; Riley v. Boynton Coal Co., et al., 305 Pa. 364; First National Bank v. Lytle Coal Co., et al., 332 Pa. 394; Barnes & Tucker Co. v. Fownes, et al., 334 Pa. 324."

The decree is affirmed at appellants' costs.