## Zimmerman Estate

*Marshall M. Cohen* and *William H. Peace, 2nd,* for exceptants.

*Bernard M. Zimmerman* and *J. Hay Brown, Jr.,* contra.

BOWMAN, P. J., April 17, 1951.—S. R. Zimmerman, also known as S. Ralph Zimmerman, for many years a prominent member of the bar of this court, died September 18, 1944. By his last will and testament dated September 8, 1924, and probated September 27, 1944, he gave his entire estate to his wife, Mary M. Zimmerman, whom he appointed executrix. On January 27, 1949, Zook Palm Nurseries, Inc., claiming to be a creditor with a claim of $8,520 presented its petition for a citation directed to the executrix to show cause why she should not file an account. In an opinion filed by the late Judge Appel, then president judge of this court, on April 18, 1949, the rule theretofore granted on the petition for a citation was discharged for lack of adequate and sufficient averments in the petition. On August 24, 1949, Zook Palm Nurseries, Inc., presented a supplemental petition, and on February 28, 1950, pursuant to direction of this court, the executrix filed a partial account showing a principal balance of $23,338.04. In an adjudication filed August 24, 1950, the claim of $8,520 (and interest of $2,619.90 from March 24, 1945) was not allowed. The matter is now before the court on claimant's exceptions to the adjudication, which claim error in: (1) Disallowing the claim and (2) awarding the balance in the account to decedent's widow.

In chronological sequence claimant contends that its claim, as set forth in the supplemental petition, arose

under the following circumstances: In the years 1930 and 1931 and for sometime prior thereto decedent was attorney for one C. A. B. Zook. At that time Zook was heavily indebted to the Lancaster Trust Company (which was liquidated under the impact of the depression of the early 1930's), which trust company was likewise represented generally by decedent. In the years indicated decedent arranged to have Zook turn over to the Lancaster Trust Company all his assets in Lancaster County, including his residence, in an effort to liquidate the indebtedness to the trust company. At that time Zook was alleged to be the equitable owner of certain real estate located in Delray Beach, Fla., legal title to which was in one John A. Means. This real estate was encumbered by a mortgage and accrued taxes. Under a plan alleged to have been conceived by decedent, Zook was to go to Florida and endeavor to make a living by developing the land as a palm nursery. A mortgage was to be placed on the property by the legal owner, defects in title cleared with the proceeds of the mortgage, and a corporation was to be formed to develop the property. On January 5, 1932, Means mortgaged the Florida real estate to one M. P. Moller in the amount of $12,000. It is alleged that decedent suggested that the proceeds of the mortgage be placed in escrow pending the clearing of the title to the property. Pursuant to this plan it is claimed that $10,020 was turned over to decedent in February 1932. It is claimed that the $10,020 so received by decedent was the balance of the mortgage money raised by the Moller mortgage after the payment of taxes and other charges incident to the mortgage transaction. On April 16, 1932, it is alleged that Zook Palm Nurseries, Inc., was incorporated under the laws of the State of Florida, and on April 25, 1932, the corporation became the legal owner of the property subject to the payment of the $12,000 on the Moller mortgage. The corporation

assumed the payment of the mortgage and in due time paid the same and caused the mortgage to be satisfied. It is then claimed that Zook, acting for the corporation, requested that decedent turn the money so delivered to him, in escrow, to the corporation. It is alleged that decedent "put off paying the said sum on the ground that he should maintain the 'status quo' until the affairs of the Lancaster Trust Company, then being liquidated, were finally settled", and that in July 1935 decedent acknowledged orally to one R. S. Yeomans, Esq., of West Palm Beach, Fla., the then president of Zook Palm Nurseries, Inc., that the $10,020 so delivered to decedent was for the purpose of the development of the land by the corporation. It is further averred that in September of 1938 Zook, on behalf of the corporation, called on decedent at his office in Lancaster and stated that the corporation needed money to operate, and as a result thereof decedent gave his personal check to Mr. Zook in the sum of $1,500. In 1939 and in the early part of 1940 Zook is claimed to have made repeated demands on decedent to turn over the balance of the fund, namely $8,520, to the corporation. On March 19, 1945, "in order that there be no question that Zook Palm Nurseries, Inc., was, and had been since its incorporation, the rightful owner of said fund of $8,520," Zook assigned and quitclaimed any rights he might have thereto to Zook Palm Nurseries, Inc.

Thus the matter remained until January 27, 1949, when Zook Palm Nurseries, Inc., initially presented its petition, as heretofore stated, for an order on the executrix to file an account.

There is evidence to support a finding that $10,020 was turned over to decedent by a check of the Florida State Bank, dated February 8, 1932, and that on September 15, 1938, decedent "advanced" (as designated by his check of that date) $1,500 to Zook.

To prove its claim exceptant offered as witnesses John L. Ruth, president of the Lancaster Trust Company (since closed and liquidated) in 1930 and 1931, Raymond S. Yeomans, president of Zook Palm Nurseries, Inc., since its incorporation and a shareholder thereof, J. Guy Eshleman, decedent's private secretary for a number of years, and Bernard M. Zimmerman, Esq., decedent's son.

We held that Raymond S. Yeomans as a stockholder was incompetent to testify under the Evidence Act of May 23, 1887, P. L. 158, 28 PS §322, regarding conversations with decedent concerning the transactions in controversy. This witness is shown by the records of the corporation to be the owner of one share of stock of an outstanding issue of 50 shares. Counsel for exceptant argues that since this one share was issued to the witness solely for the purpose of qualifying as a director under the laws of the State of Florida and was endorsed in blank by him and turned over to Zook, his interest is not substantial and that he is, therefore, a competent witness. We are not persuaded that his exclusion as a witness was in error. The fact remains that he is a stockholder of record. He has of record a pecuniary interest directly affected by the allowance of the claim. "He was, therefore, a surviving party whose interest was adverse": Swoope's Estate, 317 Pa. 584, 586. To hold otherwise would effectuate a circumvention of the Evidence Act of 1887, not then or now intended.

This court has carefully considered all of claimant's evidence and finds it insufficient to support the claim. Accordingly, the claim must be rejected.

We are asked to hold that the burden was on his (decedent's) estate to prove either the return of the fund or a right to retain it. What was said in a recent opinion of the Supreme Court in Pittsburgh No. 8

Coal Corp. v. Newcomer et al., 365 Pa. 462, 465, is apposite here: "Whatever might have been the duty of the decedent, . . . by reason of his position of trust as treasurer, director and attorney for the corporation to explain what he did with the assets entrusted to him, no such duty can after his death be justly imposed upon his personal representative. An executor can account only for what he actually received from the dead hand of his decedent. Anyone claiming that money is due from the decedent has the burden of proving his claim or identifying the particular property claimed." Exceptant has not met this burden.

There is another reason why claimant cannot succeed. The claim is resisted on the ground that it is barred by the statute of limitations. It is the opinion of this court that this position is well taken. Almost 17 years had elapsed after the $10,020 was turned over to decedent before resort was made to legal assertion, and then only upon the expiration of four years and four months after the death of decedent. If the transaction made decedent a debtor, it was followed by an obligation to enforce his accountability within the period fixed by the statute of limitations, if not within six years from the time that the money was first turned over to him in 1932, then within six years from September 1938, when Zook received the $1,500 from decedent.

At the hearing counsel for exceptant urged that a "trust relationship" arose (not ex maleficio as admitted by exceptant's counsel at the hearing), as evidenced by a letter from decedent to Raymond S. Yeomans, dated January 6, 1932, wherein decedent suggested that the proceeds (of the mortgage) be remitted to decedent's office, and by a letter dated January 22, 1932, to the same person, wherein decedent suggested the feasibility of having a sufficient amount of money

that Zook received from the Moller mortgage held in escrow pending the clearance from the record of the cloud on the title to the Florida real estate. If this be so, unless the trust is an express trust, in which event the running is from the date of repudiation, the statute applies with like force and effect.

"A person who receives money to be paid to another, or to be applied to a particular purpose, and does not pay it to the person or apply it to the purpose intended, is within the operation of the statute of limitations": Hostetter v. Hollinger, 117 Pa. 606, 611. See also Shelley's Estate, 287 Pa. 105; Dorrance v. Ryon, 35 Pa. Superior Ct. 180.

In their brief counsel for exceptant contend that an express trust was created under A. L. I. Restatement of the Law of Trusts, §32, comment c, which reads in part:

"Where the owner of property delivers in escrow the subject matter or an instrument of transfer, manifesting an intention that upon the happening of a certain event the depositee should hold the property in trust or should deliver the subject matter or the instrument to a third person as trustee, and the owner does not reserve a power of revocation, a trust is created at the time of the delivery in escrow."

From the admissible and competent testimony this court is unable to find a manifestation of such intention. Furthermore, the contention that an express trust exists must yield to the uncontradicted testimony of Mr. Eshleman, which shows a repudiation of such a status at least three or four years before the death of decedent. That this was well known to Zook and exceptant cannot be questioned.

The exceptions are dismissed and the adjudication filed August 24, 1950, is confirmed absolutely.