## Newcomer v. Huey

*John L. Spurgeon* and *Aladar J. Kuzdenyi,* for plaintiff.

*William J. Huey,* p. p., for defendant.

DUMBAULD, J., January 30, 1959.—At no. 460, June term, 1956, one William J. Huey, represented by attorney Herbert Margolis, sought a declaratory judgment that a lease to him from the Newcomers, i.e., Marguerite E. Newcomer, only child and executrix of

Frank C. Newcomer, and Blanche E. Newcomer, now also deceased, his widow, taking against the will, was still in force and effect. On June 3, 1957, in an opinion by the late Judge Morrow, it was adjudged that the lease was effectively terminated on February 1, 1955, by reason of notification given by lessors after Huey's failure to pay any royalty after July 29, 1954, though he continued to mine coal after that date: Huey v. Newcomer, 20 Fayette 85. Mrs. Newcomer died on July 23, 1957. An appeal to the Superior Court was taken by Huey at no. 68, April term, 1958, but non pros was entered on November 17, 1958.

At no. 554, December term, 1955, Huey sued the Newcomers, claiming that they had employed him at "a decent living wage" to assist them in management of their affairs. On July 2, 1956, in an opinion by President Judge Carr, the court held that such an alleged agreement would be too indefinite and uncertain to be enforceable, but that if proved to have been made, plaintiff might recover in quantum meruit "the reasonable value of the services actually rendered": Huey v. Newcomer, 7 D. & C. 2d 67.

On April 21, 1958, trial to a jury began before the writer of the present opinion. On April 23, 1958, a verdict was returned in favor of Huey against Marguerite E. Newcomer in the sum of $3,500. A motion by defendant for new trial is pending and awaiting argument.

At no. 404, June term, 1958, the Newcomers, now consisting of Marguerite as executrix of her father's and of her mother's estates, on July 18, 1958, sued Huey for royalty claimed under a lease between Huey and Frank C. Newcomer dated August 27, 1946. In this proceeding Huey pro se filed an answer on August 23, 1958, and on the same day filed a paper styled in the body as "Request for a Change of Venue" and

on the back "Complaint for a Change of Venue," and reading literatim et verbatim as follows:

"1. Whereas the undersigned, has a complaint better known as Huey vs. Newcomer No. 554 December Term, 1955 in which a Jury awarded the Complaintant $3500.00 and which order has been appealed and argument listed for August 25, 1958.

"2. Whereas the undersigned is a defendant in a counter claim better knows as Newcomer v. Huey No. 404 June Term, 1958.

"3. The undersigned herein feels that the above Court is prejudice conserning him, hereby request that a chance of venue be granted.

"4. Although many instances can be quoted, and shall be quoted upon request of the Court, if the Court feels that it cannot render a decision in favor of a change of venue, without first havein the reason quoted, or should the Attorney's for the Defendant and Plaintiff file objection to the request for a change of venue.

"5. Should the Court rule denying the request for a change of venue, without first requesting that a detailed form be filed stating therein the reason why the Undersigned feels that a change of venue is in order, Reservation is hereby made that the detailed information obtainable to this court, upon request, can be filed and considered legal, should the undersigned desire to appeal the order of the Court.

"6. It is herein requested that no action whatsoever shall be conducted, by the above Court or any other Court conserning the above mentioned cases, until, the undersigned has received a final rueling conserning the request for change of venue, from a Higher Court, unless the order is for a change of venue.

"7. It is herein requested that should this Court or any other Court, rule in favor of a change of venue,

that the change of venue shall be pernament, and that any claim against the Undersigned, can not legally be tried in Fayette County by any person or persons as long as the Political Party now in Power in Fayette County, Pennsylvania, remains in Power."

On January 14, 1959, Huey filed a written "Argument for Change of Venue," to be considered if he failed to appear in person at the next argument court. The contents of this paper are for the most part criticisms of the decision by Judge Morrow of June 3, 1957, and of delay in paying the verdict of April 23, 1958. Nothing pertinent to the topic of change of venue appears until the concluding paragraph where plaintiff, among other things, expresses his opinion "that this Court is of the nature of a Kangaroo Court, having no respect for the Law, whatsoever," and that the court is "masterminded" by a "politician" whose attorney represents the Newcomers and concerning whom Huey has also made uncomplimentary remarks.

The matter is now before us upon plaintiff's motion to strike defendant's paper writing as impertinent and scandalous. Although the application for change of venue and the written argument in support thereof might well, for the most part, be properly stricken upon that ground, we deem it better, in order to make clear the unfounded nature of Huey's complaints of unfair treatment, to consider the merits of the application.

Accordingly, we are now confronted with the question whether defendant Huey is entitled to a change of venue, either by reason of anything asserted by Huey or by reason of any facts otherwise ascertainable in this proceeding which might warrant such relief.

We begin our consideration of the subject by noting that the Constitution of Pennsylvania provides in article III, sec. 23, that: "The power to change the venue in civil and criminal cases shall be vested in the courts,

to be exercised in such manner as shall be provided by law." It thus appears that such power is not conferred in a self-executing or immediately operative manner, but requires legislation in order to prescribe the manner in which this provision is to be effectuated by the courts. This court has no inherent power to change venue or transfer cases to another tribunal for trial, but can do so only to the extent provided by legislative enactments; although the Supreme Court, in the exercise of the powers wielded by the Court of King's Bench in 1722, could probably do so upon certiorari: Wattson v. Chester & Delaware River Railroad Company, 83 Pa. 254, 256 (1877); Commonwealth v. Balph, 111 Pa. 365, 376 (1886); Crawford's Estate, 307 Pa. 102, 107 (1931).

It may be noted in passing that in Federal courts change of venue is likewise the creature of statute (Rule 21, Federal Rules of Criminal Procedure), and that legislation in Pennsylvania on this subject must not be by "local or special law": Pennsylvania Constitution, art. III, sec. 7.

What legislation has the General Assembly enacted? We turn to the Act of March 30, 1875, P. L. 35, 12 PS §111, et seq. This act deals with civil cases, and parallels the similar provisions of the Act of March 18, 1875, P. L. 30, 19 PS §551, which relates to criminal cases.

The grounds for change of venue set forth in section 1 of the Act of March 30, 1875, are: Personal interest in the case on the part of the judge required by law to try it, or of a near relative of such judge; local prejudice such that a fair trial cannot be had in cases where the county, or a municipality, or officers thereof, are parties; adverse interest on the part of a large number of the inhabitants of the county.

Section 3 authorizes change of venue in three additional situations:

"First. Whenever it shall appear to the satisfaction of the court in which such cause is depending, that any party to such cause hath an undue influence over the minds of the inhabitants of the said county, or that they are prejudiced against the applicant, so that a fair and impartial trial cannot be had.

"Second. Whenever in any plea of land two juries of such county have failed to agree and have been discharged without rendering a verdict therein.

"Third. Whenever it shall be made to appear to the court that a fair and impartial trial cannot be had in the county in which any such cause is depending": 12 PS §113.

Section 2 provides the method of applying for change of venue:

"The applicant for any such change of venue may apply to the court in term time, or to any law judge thereof in vacation, by petition setting forth the cause of the application, which shall be accompanied by his affidavit of the truth of the facts alleged therein, and that the said application is not made for the purpose of delay, and praying a change of venue; and after reasonable notice thereof having been given to the opposite party or his attorney, the said court or judge shall, if satisfied of the truth of the facts alleged, award a change of venue of the said cause to some county where the cause complained of do not exist": 12 PS §112.

It follows that, even in the case of situations falling under section 1 of the act, where change of venue is mandatory and not discretionary as under section 3, the court must be "satisfied of the truth of the facts alleged" in order to bring the case within the category of situations warranting a change of venue: Little v. Wyoming County, 214 Pa. 596, 600 (1906); Brittain v. Monroe County, 214 Pa. 648, 650 (1906); Common-

wealth v. Buccieri, 153 Pa. 535, 546 (1893); Philadelphia v. Ridge Ave. Pass. Ry. Co., 143 Pa. 444, 465 (1891). The decision of the trial court will not be disturbed except in case of abuse of discretion: Commonwealth v. March, 248 Pa. 434, 438 (1915).

In exercising its discretion in a civil case, the court should be mindful of the rights of the other party to the litigation as well as of those of the applicant for a change of venue. In a criminal case the Commonwealth is theoretically omnipresent and practically can appear without inconvenience in any part of the State for trial. In a civil case, however, the burden and hardship of parties required to travel, with their witnesses and exhibits, to a distant place for trial, represent a substantial factor which the court's decision as to the propriety of a change of venue vel non should not ignore. The same elements should be considered as are given weight in applying the doctrine of forum non conveniens. See Gulf Oil Corp. v. Gilbert, 330 U. S. 501, 508-509 (1947).

Applying the foregoing to the case at bar, we think it clear that defendant Huey has not established any ground warranting change of venue under the above mentioned legislation.

Nothing in section 3 is remotely involved in the case at bar. That section obviously deals with matters of public sentiment affecting the minds of jurors so as to prevent a fair and impartial trial. The same is true with respect to the grounds given in section 1, except those relating to the judge's, or his near relatives, interest in a case. But Huey has alleged no facts showing that public sentiment in Fayette County is inflamed against him or in favor of his opponents in the litigation.

With respect to the interest of the judges in the case, he has made no allegation falling within the provision of the act. We take judicial knowledge of the

fact that none of the present members of the court, nor our late colleague Judge Morrow, had any personal interest in the case at bar.

The only allegation pertinent to the issue whether Huey could get a fair trial in Fayette County is the assertion in paragraph 3 that: "The undersigned herein feels that the above Court is prejudice (sic) conserning (sic) him, hereby request that a chance (sic) of venue be granted." Nothing is alleged to make this claim of prejudice more definite and certain. Since he requests in paragraph 7 that no action be taken in connection with any litigation against him "as long as the Political Party now in Power in Fayette County, Pennsylvania, remains in Power," it is reasonable to infer that he regards the court as biased politically, to his detriment. But he does not allege, either that he is a Republican or that his adversary is a Democrat. We will state that we neither know nor care what the political affiliation is of either party to the case at bar. Moreover, most of the complaints in Huey's written argument are directed against the alleged misdeeds of the late Judge Morrow, who was of the opposite political party, and who therefore would presumably be capable, under Huey's mode of reasoning, of giving him a fair trial. Hence it would seem that Huey's dissatisfaction with the court is simply based upon the fact that he lost his case at no. 460, June term, 1956.

But any reasonable mind must recognize that there is a difference between deciding a case against a litigant and failure to give him a fair trial. Cf. Ginsburg v. Stern, 19 F. R. D. 238; 148 F. Supp. 663 (W. D. Pa., 1956); affirmed 242 F. 2d 379 (C. A. 3, 1957). Usually one side loses in every law suit, just as in a baseball game (although often both sides lose, as in a modern war).

Furthermore, Huey won in no. 554, December term, 1955, tried in Fayette County before the writer of this present opinion. The jury awarded Huey a verdict of $3,500. Before the trial started, Huey was informed that the writer of this opinion had represented the Newcomers in preparing the paper book and arguing the appeal in Pittsburgh No. 8 Coal Corporation v. Newcomer, 365 Pa. 462 (1950), a litigation with other parties and not involving Huey, and Huey was given the opportunity of having the case continued for trial before another judge if he so desired.* Huey expressed the desire to proceed with the trial, and his confidence in the court was apparently justified by the outcome of the case, in which he was successful in obtaining a verdict of $3,500 in his favor.

We thus find no merit whatsoever in Huey's request for change of venue. It would stagnate the wheels of justice to give special treatment to litigants without better-founded reasons than have been advanced here. It is important that the ordinary course of justice be disturbed only on grave occasions, and not for frivolous or unsubstantial reasons: Crawford's Estate, supra, at 108-109; Ginsburg v. Stern, supra, at 665.

Moreover, we also find that the application must be dismissed for failure to comply with the formal requirements of section 2 of the act.

The affidavit made by Huey is defective in that it does not contain a statement that the application "is not made for the purpose of delay," and likewise there

---

* There was also preliminary discussion as to whether Huey should act pro se, as his attorney, Herbert Margolis, had disapproved of Huey's action in writing the letter quoted in Judge Morrow's opinion in the previous case, and had not made preparations to try no. 554, December term, 1955. He did, however, agree to conduct the trial, though not considering himself responsible for the case by reason of lack of preparation. Here too the court afforded Huey opportunity to have the case prepared by counsel, but here too Huey decided to proceed at once.

is no proof of service upon or notice to the opposite party or counsel of the application for change of venue.

For the foregoing reasons the application is denied.

### Order

And now, to wit, January 30, 1959, the application of defendant William J. Huey for a change of venue is hereby dismissed and denied.