## Lackawanna Auto Body and Fender School, Inc. v. The First National Bank of Avoca

*Charles A. Shaffer,* for plaintiff.
*John R. Reap, Jr.,* for defendant.
*Joseph M. Reardon,* for additional defendant.

SCHIFF, September 14, 1967.—This is an appeal by plaintiff from the award of a board of arbitration in favor of defendant, First National Bank of Avoca, and against plaintiff, and in favor of plaintiff and against additional defendant, Helen McLaughlin Harris, in the amount of $123.94.

This is an action in assumpsit by plaintiff, Lackawanna Auto Body and Fender School, Inc., against the

First National Bank of Avoca in which Helen Mc-Laughlin Harris has been joined, with her consent, by defendant bank as an additional defendant. The facts herein involved are found to be as follows:

## FINDINGS OF FACT

1. Lackawanna Auto Body and Fender School, Inc., is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania.

2. The First National Bank of Avoca, defendant, is a corporation organized and existing under the banking laws of the United States of America with its place of business at Main Street, Avoca, Luzerne County, Pa.

3. The additional defendant is Helen McLaughlin Harris, an individual who resides at 512 Colfax Avenue, Scranton, Lackawanna County, Pa., and who has consented to be joined as an additional defendant in this action.

4. Pursuant to a written agreement, dated November 1, 1950, between plaintiff and one John F. McLaughlin, the late husband of the additional defendant, the said John F. McLaughlin was named trustee of the plaintiff school. This was done at the instance of the United States Veterans Administration because of certain irregularities in the conduct of the school by one Harry S. Baicker, an officer of said corporation and others.

5. Under the terms of this agreement, Mr. McLaughlin, who was then president of the defendant bank, was to serve as trustee for a period of one year. He was to manage and supervise the operation of the school, in return for which he was to be paid the sum of $225 per month.

6. On November 29, 1951, this agreement was extended for a period of one year until October 31, 1952.

7. On March 4, 1952, the plaintiff corporation executed a release in favor of the said John F. McLaughlin, discharging him and his heirs, executors, administrators, etc., from any liability arising from this trust relationship with regard to the inventory, machinery, equipment, goods and chattels situated on the premises of said school.

8. Shortly before the release was executed, i. e., in the latter part of February 1952, the school terminated its activities and the corporation has been dormant since that time.

9. During the time that Mr. McLaughlin acted as trustee for plaintiff, he maintained a checking account in the defendant bank entitled "Lackawanna Auto Body & Fender School, Inc., John F. McLaughlin, Trustee".

10. John F. McLaughlin died in 1955.

11. At the time of his death and at the time of the termination of activities by the plaintiff corporation, there was a balance of $1,848.94 in said trustee account.

12. In April 1963, after numerous communications between a representative of the defendant bank and the United States Veterans Administration, the bank was advised that the Veterans Administration had no further interest in the matter and that the bank could release the above funds to the persons entitled thereto. This inquiry was precipitated by the fact that the defendant bank had been advised by the Commonwealth of Pennsylvania that if the funds were not claimed, they would escheat to the Commonwealth. There is no evidence that any effort was made to discover the then existence or whereabouts of the plaintiff corporation.

13. On or about April 17, 1963, the bank paid the fund to the additional defendant, Helen McLaughlin Harris, as executrix of her husband's estate, after she

had provided them with an affidavit that these funds were the private funds of her late husband. She claimed that these were trustee commissions earned by him in his lifetime. There is no credible evidence to support this claim, however, although some proof thereof was attempted.

14. Decedent, John F. McLaughlin, performed no substantial services as trustee subsequent to the termination of the activities of the plaintiff school so as to entitle him to receive the funds in question as earned commissions as trustee. This conclusion is supported by testimony to the effect that no activities were conducted by the school subsequent to February 1952. This fact can also most accurately be concluded from Mr. McLaughlin's own action in taking his final payment for $75, representing his agreed-upon commission for one-third of the final month during which he actively functioned as trustee.

15. In 1963, Harry S. Baicker, identified as the secretary of the plaintiff corporation, made demand upon defendant bank for payment of the fund in question.

16. Mr. Baicker knew as early as March 1952 that there was a balance of about $1,800 in the aforesaid trustee account. He, however, never sought to recover the balance until he made demand for payment thereof upon the bank in 1963. At that time, he was advised that the bank had turned the money over to Helen McLaughlin Harris, as executrix of the estate of John F. McLaughlin, deceased.

## QUESTION OF LAW

The principal question presented is, of course, who is entitled to the moneys in question?

Incidental to this question is the necessity of determining certain corollary questions. These are:

1. Was the plaintiff corporation guilty of laches in asserting its claim against the First National Bank of Avoca so as to bar the present claim?

2. If it be determined that the defendant bank is responsible to plaintiff for payment of the amount in controversy, then is the additional defendant also liable or liable over to the bank?

3. What, if any, is the effect of the release described in finding of fact number 7 as among the parties herein?

4. Was Mr. Baicker, who was called as a witness in behalf of and as an officer and stockholder of the plaintiff corporation, entitled to testify against the additional defendant, Helen McLaughlin Harris? This determination involves a consideration of whether his testimony was proscribed by the application of the Dead Man's Rule, Act of May 23, 1887, P. L. 158, sec. 5, 28 PS §322. This also invokes a consideration of whether Mr. Baicker's testimony, even if precluded against Mrs. Harris by the Dead Man's Rule, could be given against the original defendant bank.

## DISCUSSION

We will first consider whether the testimony of Mr. Baicker should have been stricken so as to remove it from our consideration in the matter. Counsel for the additional defendant, Helen McLaughlin Harris, made such a motion at the conclusion of Mr. Baicker's testimony. This motion was based on the premise that since Mr. Baicker was an officer of a closely held corporation, his testimony should have been precluded upon application of the Dead Man's Rule. It is true that a stockholder of a corporation has such an adverse interest as to preclude his testimony against a decedent: Pittsburgh No. 8 Coal Corporation v. Newcomer, 365 Pa. 462.

However, the right to bring into play the application of this rule of law can be waived. When one fails

to assert this rule and permits one with an interest adverse to a decedent to testify and then cross-examines him, he cannot call for the application of the Dead Man's Rule: Heller v. Fabel, 290 Pa. 43; Hughes v. Bailey, 202 Pa. Superior Ct. 263.

It is true that the cases above cited do contain language to the effect that such a waiver can take place only when the adverse interest of the witness is known or becomes known to the opposing party. A suggestion has been made by the additional defendant that the fact that Mr. Baicker was a stockholder in the plaintiff corporation was not known until the conclusion of his testimony. We cannot find that this fact was not known to the additional defendant under the circumstances of this case. This is particularly so in view of the fact that he had previously testified before the board of arbitrators herein. That fact alone might in itself, have constituted a waiver of this rule: Hughes v. Bailey, supra. We, therefore, deny additional defendant's motion to strike.

Furthermore, as we shall more fully discuss later, this action is not against Helen McLaughlin Harris as executrix of the estate of John F. McLaughlin, but rather is against her individually.

In view of the above ruling, it is unnecessary to consider whether the testimony of Mr. Baicker was admissible against the First National Bank of Avoca alone.

The next matter for our consideration is whether plaintiff was guilty of laches in failing to assert his claim against the bank prior to the time that it released the money in question to Helen McLaughlin Harris.

Laches is neglect for an unreasonable and unexplained time under circumstances permitting diligence to do what in law should have been done. This neglect by one party is not alone enough to bring into

play the doctrine of laches. In addition, it must be shown that the delay by one party resulted in prejudice to the party asserting the doctrine: Brodt v. Brown, 404 Pa. 391.

In the instant matter, it is apparent that defendant First National Bank of Avoca might sustain some injury as the result of this action. However, this injury does not come about as a result solely of delay upon the part of plaintiff. Rather, the bank has been placed in its present position as a result, at least in part, of its own lack of diligence in seeking to locate the true owner of the bank account in question, together with its reliance upon the affidavit of Helen McLaughlin Harris, as executrix of the estate of John F. McLaughlin. These factors, rather than delay alone on the part of plaintiff, were the principal reason for its action.

The preceding comment assumes that plaintiff is the true owner of the funds in question and, therefore, is the one entitled to receive payment thereof. Whether this is so requires a discussion of the relationship between plaintiff and the defendant bank.

The undertaking of a bank when it accepts a deposit is contractual in nature, the relationship of a depositor to the bank being that of creditor and debtor. This being so, a bank has an absolute liability to pay funds deposited with it to the proper person: Coffin v. Fidelity-Philadelphia Trust Company, 374 Pa. 378.

Who then was the proper party, the creditor, to whom the within funds should have been paid?

Although it seems apparent that the Act of May 15, 1933, P. L. 624, art. IX, sec. 904, 7 PS §819-904, as amended, might not have been intended to apply herein, its language is sufficiently broad to assist us in our present determination. The above section of the "Banking Act", being in effect at all times pertinent hereto, provides that whenever a deposit is made in

an institution by any person describing himself in making the deposit, as trustee for another, in the absence of any knowledge upon the part of the institution of the existence of an actual trust, subject to specific terms, then upon the death of the person designated as trustee, the institution may pay the fund to the person for whose benefit the deposit was thus stated to be made.

Furthermore, it has long been the law of this Commonwealth that money deposited by one as trustee for another is prima facie the property of the one for whose benefit it was deposited: Arnold v. The Macungie Savings Bank, 71 Pa. 287. It may be that the burden of proving to whom the property belonged may have changed over the years: Downey v. Duquesne City Bank, 146 Pa. Superior Ct. 289. However, it clearly appears that when money is deposited in a bank in trust for a named person, the beneficiary is entitled to that fund. This we find to be so in the instant matter. The First National Bank of Avoca owed its primary liability to the beneficial owner of the trust account with which we are here concerned. We have concluded that the estate of the decedent trustee had no right to this fund on the basis that it was unclaimed commissions due the trustee. Accordingly, the bank should not have paid the money to anyone other than plaintiff herein.

We have pointed out that incidental to the determination of who was entitled to the fund is an additional determination of whether or not the additional defendant is liable to the original defendant because of the fact that the fund was paid to her upon her representation that she was the person entitled to the fund. Unfortunately, that question cannot be determined in the instant proceedings. It is clear from the testimony presented herein that the money was paid to Mrs. Harris as executrix of the estate of her de-

ceased husband, John F. McLaughlin. Mrs. Harris has been joined in this proceeding as an individual. Without more proof than we presently have before us, we cannot conclude that she should be found liable for payment of this sum of money in an individual capacity when it is clear that she received the fund in a fiduciary capacity as the legal representative of the estate of her late husband.

It is apparent, therefore, that in this proceeding we cannot determine her liability, if any, to the bank. We have, therefore, considered only the respective rights of plaintiff and the original defendant herein.

Finally, we must determine the last corollary question propounded above, i.e., what was the effect of the release executed between Mr. McLaughlin and plaintiff upon this cause of action?

Certainly, as argued by plaintiff, this release can have no direct effect upon the principal parties to this proceeding, since the release was between plaintiff and someone other than the defendant bank. It does, however, have some probative value in our determination of whether or not the parties considered this fund to be the personal property of decedent or that of plaintiff.

The release was a simple general release form, and it does provide that plaintiff released the trustee, John F. McLaughlin, from any and all claims whatsoever which might exist against him for all time "from the beginning of the world to the date of these presents". If this were an action between plaintiff and the decedent trustee, our problem might be a more difficult one. However, a further reading of the release specifically makes reference to the responsibility of the trustee with regard to the "inventory, machinery, equipment and all other goods and chattels situated on the premises of said school located at No. 213 N. 9th Ave., Scranton, Penna." It makes no spe-

cific reference to the funds held in the bank account here in question, although it is broad enough in its terms that it might be argued that it was intended to include them.

It has been held that where, as in the instant matter, a release clause is general and would seem to include any and all obligations, if it is preceded by a recital of the intention of the parties specific in its phraseology and which referred to the only subject matter with which the parties meant to deal, then the words of general application used in the release are not to be given their broadest significance but will be restricted to the particular matters referred to in the recital: Lancaster Trust Company, to use, v. Engle, 337 Pa. 176. Applying this rule to the within release, we conclude that the instrument dealt only with the goods and chattels of plaintiff located at the place where the school was conducted and did not contemplate the trust fund in question.

In addition, it is apparent from all of the testimony and exhibits herein that the fund was not surrendered to plaintiff by the trustee at the time of termination of the trust, not because he regarded it as his own property, but because of instructions or directives from the Veterans Administration not to release the fund to the beneficiary of the trust until the question of plaintiff's civil and criminal responsibility for mismanagement of the public funds supplied to the school had been finally resolved. That this is so is confirmed by the fact that even when the funds were finally released to Mrs. Harris, permission to do so was first obtained by the bank from the Veterans Administration. It is further apparent that the parties to the release did not themselves regard the fund to be the separate property of Mr. McLaughlin, since he felt himself entitled to a fee of only $75 for approximately one third of the final month he served prior to the

execution of the release. Furthermore, even though he survived the termination of the trust relationship for approximately three years, he exercised no control over the fund which would indicate that he regarded these assets as his own property acquired by virtue of the release; rather, he retained them intact in a separate account under his name as trustee.

It is argued also that decedent was entitled to retain these funds because the trust agreement between Mr. McLaughlin and plaintiff providing for payment to the trustee of the sum of $225 per month, had, on November 29, 1951, been extended for a period of one year. It is, therefore, contended that decedent was entitled to this monthly payment for an entire year from the above date. This argument ignores the fact that the trust agreement entered into provided also that the trust could be terminated by agreement of the parties. It was, in fact, so terminated in March 1952. This conclusion is inescapable on the basis of all the evidence presented.

Having disposed of the questions of law presented to us, we must conclude that the bank should not have paid the fund to Mrs. Helen McLaughlin Harris, but rather that plaintiff, Lackawanna Auto Body and Fender School, Inc., is entitled to payment of these assets.

Before embodying this determination in an order, however, we are called upon to decide certain motions or objections made during trial upon which we have reserved rulings. These matters and our rulings thereon are as follows:

First, the motion of defendant, First National Bank of Avoca, to dismiss plaintiff's cause of action because of its alleged failure to prove a termination of the trust herein is denied.

The motion of additional defendant, Helen McLaughlin Harris, to strike the testimony of Harry S.

Baicker because it is violative of the Dead Man's Rule is also denied.

One final comment should be made in conclusion. It has been proved that the only witness for plaintiff herein, Harry S. Baicker, was convicted of numerous criminal charges involving the improper operation of certain "G. I. Schools". It is urged that his testimony is totally unworthy of belief because of these convictions. We have carefully scrutinized his testimony with the utmost regard for all of the inferences flowing from these convictions. Our conclusions, however, do not require total and absolute reliance on the testimony of Mr. Baicker, but rather are suggested essentially by the documentary evidence of record and the logical inferences to be drawn from all of the testimony. Where reference is necessary to Mr. Baicker's testimony, we find it to be generally supported by documentary or physical facts or other evidence.

### CONCLUSIONS OF LAW

1. Plaintiff is entitled to receive from defendant, First National Bank of Avoca, the sum of $1,848.94, plus interest from October 1963.

2. Additional defendant, Helen McLaughlin Harris, is in no way, in her own right, personally responsible directly to plaintiff, nor is she liable over to defendant, First National Bank of Avoca, for payment of the aforesaid sum of money.

3. Plaintiff, Lackawanna Auto Body and Fender School, Inc., was not guilty of laches so as to bar the within claim against defendant, First National Bank of Avoca.

4. The release executed by plaintiff to the decedent trustee, John F. McLaughlin, is not effective to bar the claim herein between plaintiff, Lackawanna Auto Body and Fender School, Inc., defendant, First National Bank of Avoca.

Accordingly, we enter the following

ORDER

Now, September 14, 1967, at 3 p.m., (EDT), we find for plaintiff, Lackawanna Auto Body and Fender School, Inc., and against defendant, First National Bank of Avoca, and enter a verdict for plaintiff in the amount of $1,848.49, plus interest from October 24, 1963.

We further find in favor of the individual defendant, Helen McLaughlin Harris, and against plaintiff, Lackawanna Auto Body and Fender School, Inc., and the original defendant, First National Bank of Avoca, and enter a verdict for the said additional defendant in her individual capacity.